# McDaniels *v.* The State.

## *Murder.*

(Decided June 30, 1909. 50 South. 324.)

1. *Criminal Law; Change of Venue.*—Unless it clearly appears to this court that the trial court's determination of the application for a change of venue was erroneous, the refusal of the court to grant the application will not be disturbed.

2. *Evidence; Accomplices; Corroboration.*—An accomplice testified to a conspiracy to kill the deceased, described the circumstances and the methods followed and stated that the defendant was a party to the conspiracy and watched outside while the murder was being committed. Another witness testified that on Monday night before the deceased was killed she heard the defendant and the accomplice and others connected with the conspiracy talking in her house about a conspiracy to kill the deceased. Held, sufficiently corroborative to sustain a conviction under section 7897, Code 1907.

3. *Charge of Court; Corroboration.*—Where the only testimony tending to corroborate the testimony of the accomplice was that of W., a charge asserting that if the jury believe from the evidence that the only evidence tending to corroborate the accomplice was the testimony of W., and that if they did not believe her testimony to be true, they must find the defendant not guilty, was a proper charge, and its refusal error.

APPEAL from Hale Circuit Court.

Heard before Hon. B. M. MILLER.

Joe McDaniel's was convicted of murder in the first degree, sentenced to death, and he appeals. Reversed and remanded.

The facts are sufficiently stated in the opinion of the court. The following charges noted in the opinion, among others, were refused to the defendant: "(4) The court charges the jury that, if they have a reasonable doubt as to the truth or falsity of the evidence of the woman, Emma Williams, who testified in this case, they must acquit the defendant. (5) The court charges the jury that the only evidence introduced by the state to corroborate the testimony of Charlie Taylor is evi-

[McDaniels v. The State.]

dence tending to show the accomplices of this defendant agreed to kill R. W. Drake at Shad Williams' house, and if they have a reasonable doubt of the truth or falsity of that testimony they must acquit the defendant. (6) The court charges the jury that if they believe from the evidence that the only evidence tending to corroborate the testimony of Charlie Taylor that tends to connect the defendant with the commission of the offense is the testimony of Emma Williams, and if the jury do not believe the testimony of Emma Williams to be true, they must find the defendant not guilty."

CHARLES E. WALLER, and H. B. BENNERS, for appellant.—The court should have granted application for change of venue.—*Thompson v. The State,* 117 Ala. 67. The corroboration was not sufficient.—*State v. Mikesell,* 30 N. W. 474. Charges 4 and 5 were good.—*Parker v. The State,* 45 South. 248; *Jackson v. The State,* 136 Ala. 30.

ALEXANDER M. GARBER, Attorney-General, and THOMAS B. SAMFORD, for the State. The court properly denied the application for change of venue.—*Hawes v. The State,* 88 Ala. 37; *Howard v. The State,* in MS. Charge 1 was properly refused.—*Davis v. The State,* 131 Ala. 10. Charge 2 was properly refused.—*Bonner v. The State,* 107 Ala. 97; *Berney v. The State,* 87 Ala. 80. The court properly refused charges 4 and 5.—*Parish v. The State,* 139 Ala. 16.

McCLELLAN, J.—The appellant stands condemned to suffer death for the murder of Robert W. Drake. Preliminary to the trial below the defendant moved for a change of venue. The court denied the motion, and this action of the court is the first question presented for review here. This court, in *Hawes' Case,* 88 Ala.

37, 7 South. 302, announced the rule that the action of a trial court in refusing an application for a change of venue will not be reversed unless this court can "see, and see clearly, that its action was wrong," that the presumption prevails that the ruling was free from error, until error is affirmatively shown. In *Howard's Case*, in Ms.—,the *Hawes Case*, in this particular, was followed. After a careful review of the evidence offered on the hearing of the application for change of venue, and with due regard for the rule stated, we are not convinced that error was committed in the refusal of the application.

The important question presented by the record and argued by counsel for appellant raises for our review the inquiry whether the testimony of the accomplice, Charlie Taylor, implicating the defendant, was sufficiently corroborated to render the submission of guilt vel non of the defendant to the jury. Accepting appellant's theory that the witness Emma Williams' testimony was all the evidence offered assuming to afford the necessary corroborating testimony of that given by Taylor, we entertain the opinion that Williams' testimony sufficed for the purpose of corroboration. We will briefly set out our reasons:

Taylor testified that he, Shad Williams, Ed Howard, and defendant concocted, after discussion, the conspiracy to kill Mr. Drake; that on the occasion of his murder all entered his room, one being armed with a piece of iron; that, finding Mr. Drake asleep, it was then arranged for the defendant to "watch" outside, which defendant did; that Williams struck Mr. Drake on the head with the piece of iron, killing him; that one of them secured from his trousers the store (which was nearby) keys; that the four went there, robbed one of cash drawers, and attempted to open the other cash

drawer and the iron safe; that they took an inflammable oil out of the stock, poured it about the building, and set fire to it; that some of the oil was then carried back to the house, the trousers of the deceased were saturated with it, and, placing the trousers beneath the body of the dead man, fire was set to the trousers. These are some only of the details of the tragedy. Emma Williams' testimony, as presently important, was, the record shows, as follows: "On Monday night before Mr. Drake was killed, I heard Shad Williams, Ed Howard, and Charlie Taylor talking at my house. Q. Did you hear any talk between them about a plot to kill Mr. Drake? A. Yes, sir. Q. Who was it you heard talking? A. Shad Williams, Joe McDaniel, and Ed Howard. Q. What did they say? A. Shad Williams say they was going to kill Mr. Drake to get them some money."

In one view, clearly open to adoption, both by the court as a preliminary matter to determine whether it corroborated Taylor's testimony and by the jury upon submission to them, the witness affirmatively stated that defendant was one of the three, with Shad Williams and Ed Howard, she heard talking about a plot to kill Mr. Drake. In this particular Taylor's testimony, detailing the plot to kill Mr. Drake, finds, if credited, direct and material support. After responding to the question as last indicated, the witness said that Williams said "*they* was going to kill Mr. Drake." (Italics supplied.) The *they* referred to in the answer of the witness obviously had reference to the parties said to have been then present, and defendant was one of them. These considerations appear conclusive to us against the insistence for appellant that the testimony of the accomplice was uncorroborated. The affirmative charge, requested by defendant, was, hence, properly refused.

[McDaniels v. The State.]

The defendant requested, and was refused, several charges postulating an acquittal of the defendant if the jury did not credit the testimony of the sole witness whose statements tended to corroborate the testimony of Charlie Taylor, the confessing accomplice. The rule sought to be announced in these charges should have been applied to the case. The statute (Code 1907, § 7879) forbids a conviction on the testimony of an accomplice, unless corroborated as the statute prescribes. In this case the corroboration (if offered) depended wholly upon the testimony of Emma Williams. Disbelief of her testimony necessarily forbade, under the letter of the statute, a conviction of this defendant.

We have numbered the refused charges for convenience. All of the Justices concur in the conclusion that the court erred in refusing charge 6. Justices ANDERSON and DENSON entertain the opinion that the court also erred in refusing charges 4 and 5. Justice SAYRE holds that charges 4 and 6 should have been given, but that charge 5 might properly have been given, though the court did not err in refusing it, because it placed the burden on the court to declare what the evidence was. The principles announced in *Segars' Case*, 86 Ala. 59, 5 South. 558, and *Johnson's Case*, are applicable to these charges. Charge 6 hypothesized the mere belief by the jury of the testimony of Emma Williams, whereas the essential, under the statute, to a conviction, where the corroboration of the accomplice's testimony is offered by a single witness, is that such witness' testimony shall be believed beyond a reasonable doubt. Charge 6 did not so intend; but its failure in that respect was favorable to the prosecution.

For the error in refusing charge 6, the judgment is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur.