(136 So. 278)

## HICKS v. STATE.

### 6 Div. 27.

Court of Appeals of Alabama.

June 30, 1931.

Rehearing Denied Aug. 4, 1931.

John A. Posey and Thos. J. Carey, both of Haleyville, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for the State.

SAMFORD, J.

The defendant and one Harald Culbreath were indicted separately for the murder of Gilbert Ayers. The murder was done in a lonely cabin, in the government forest, in Winston county. Nobody was present at the time of the homicide except Ayers, the defendant and her small girl child, and Culbreath. The child was asleep at the time and even if she had been awake she probably would not be allowed to testify, on account of her tender years. The testimony for the state by disinterested witnesses, who examined the house the day after the homicide, tended to prove by circumstantial evidence that there had been a general fight in the room, and that in the mêlée Ayers was killed. The eyewitnesses to the homicide were Culbreath and defendant, both of whom detailed a state of facts tending to prove that Ayers was murdered in his sleep, and that the murder was willful, deliberate, and premeditated. It would serve no good purpose to set out this evidence in detail, as no exceptions were reserved thereto on the trial. The only material difference between the details as given by Culbreath and defendant is that he testified that it was this defendant who perpetrated the deed and dominated him in placing the body in the back end of a Ford coupé, driving over the northern part of the state and disposing of the body in a wood in Marshall county. On the other hand, defendant testified that it was Culbreath who committed the deed and forced her to aid in disposing of the body and to accompany him in his flight away from the scene. There were some facts and circumstances tending to corroborate the defendant's statement, but as to that we express no opinion, as that was a question for the jury.

The defendant Culbreath, under the facts, in any event was an accomplice, and without legal corroboration this defendant could not be convicted on his testimony alone. Without the testimony of Culbreath, there is no evidence sufficient to connect this defendant with the commission of the crime. On this point appellant is very insistent. As to this, we have this to say: In this case, and in connection with the testimony of Culbreath, flight is a material fact to be considered by the jury in connection with all the other evidence in the case. As to this, the jury had the details of a flight from the scene of the murder, beginning at 8:30 on the night of the homicide and ending the next afternoon at Ft. Payne, Ala., where Culbreath was arrested at the instance of defendant. If this flight was voluntary on the part of defendant, and was dominated and directed by her, and the jury should so believe beyond a reasonable doubt, this fact, so proven, would tend to a corroboration of Culbreath and would be sufficient upon which to base a verdict. If, on the contrary, defendant was forced by Culbreath, either by force or duress invoked by fear or threats, to accompany him in his flight, such act would not be a flight on her part, and the testimony of Culbreath, unaided by other evidence, would not be sufficient to convict.

The rulings of the court arising out of questions presented, touching the above contention, were free from error. In these rulings are included the motion to exclude the evidence and the request for the affirmative charge.

The motion of defendant to quash the indictment because she had appeared before the grand jury and given evidence regarding the crime was properly overruled. There was no allegation or evidence that defendant's presence and testimony in the grand jury was other than voluntary. The case of Culbreath v. State, 22 Ala. App. 143, 113 So. 465 is not in point here.

In his oral charge, the court instructed the jury:

"Now gentlemen, you will not get the idea, or you should not get the idea, that this outside evidence, corroborative evidence, need be of itself sufficient to satisfy you beyond a reasonable doubt that the defendant is guilty. If the law required that, then the testimony of the accomplice wouldn't be needed. If the law says you must have enough evidence outside of the testimony of the accomplice to satisfy you beyond a reasonable doubt that the defendant is guilty, then there would be no need to bring the accomplice into court and put him on the stand at all, and the law doesn't require that. The law says before you can consider the testimony of the accomplice there must be other evidence which not only tends to show the crime was committed, but tends to show that the defendant is connected with it; in other words, points the finger of suspicion at the defendant."

The first part of this excerpt states the law correctly, but the true statement is qualified

432

by the court as follows: "In other words, points the finger of suspicion at the defendant." This qualifying statement lowers the requirement as to the weight of the evidence, and is error. Evidence which only "points the finger of suspicion" is not sufficient upon which to base a conclusion in a criminal case, and evidence in corroboration of an accomplice, like all other evidence in a criminal case, must be believed beyond a reasonable doubt. In other words, as in this case, it is for the court to say what is corroborative evidence but it is for the jury to say from the testimony whether the facts adduced establish the corroboration beyond a reasonable doubt. Horn v. State, 15 Ala. App. 213, 72 So. 768. A suspicion does not take the place of the age old rule that in order to sustain a conviction the facts necessary thereto must be proven by evidence beyond a reasonable doubt. Moon v. State, 19 Ala. App. 176, 95 So. 830; Spelce v. State, 17 Ala. App. 401, 85 So. 835; Tidwell v. State, 23 Ala. App. 409, 126 So. 186; Ammons v. State, 20 Ala. App. 283, 101 So. 511; McDaniels v. State, 162 Ala. 25, 50 So. 324.

In view of the fact that this case must be reversed, we do not consider separately the many exceptions reserved during the taking of testimony, nor to the refusal of the court to grant defendant's motion for a new trial, further than to say the court's rulings on the admission of testimony were free from error, and that the testimony of jurors as to what transpired in the jury room while discussing the case should never be allowed.

For the error, as above pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.