8 So.2d 202

## BAILEY v. STATE.

### 5 Div. 145.

Court of Appeals of Alabama.

Jan. 13, 1942.

Rehearing Denied Feb. 3, 1942.

Will O. Walton, of LaFayette, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

376

BRICKEN, Presiding Judge.

The indictment against the appellant and upon which he was tried in the court below charged that Joe Huguley, Otis Reed and Leo Bailey (appellant) feloniously took certain described money of the United States of America, the property of Bob Adams, from his person, and against his will, by violence to his person, etc. That is to say said indictment charged the offense of robbery.

It is shown by this record that when the above named Joe Huguley and Otis Reed were arraigned upon the above indictment, they, each respectively, pleaded guilty and upon their pleas of guilt they were, each, adjudged guilty of the offense charged in the indictment by the trial court and were accordingly sentenced to imprisonment in the penitentiary of this State.

■ Under his arraignment upon the above indictment Leo Bailey, appellant, interposed his plea of not guilty, and thereupon the burden was upon the State to prove, beyond a reasonable doubt, both the robbery charged in the indictment, and Leo Bailey's criminal connection therewith.

Upon the trial of this defendant in the lower court, it was proven, without dispute, that one Mr. Bob Adams was robbed of certain money at his place of business in Lee County, Alabama, by Joe Huguley and Otis Reed on a Saturday night in the month of August, 1939, and that a pistol was used by said Joe Huguley in the commission of said robbery.

Upon the trial of the defendant the only question about which there was any substantial dispute was whether or not this appellant was connected with the commission of said offense.

The said Joe Huguley and Otis Reed were, each respectively, used as witnesses by the State upon the trial of the appellant in the court below, and according to the testimony of the said Joe Huguley the robbery of Mr. Adams by Joe Huguley and Otis Reed was arranged by this appellant.

■ The testimony of Joe Huguley and Otis Reed, self-confessed felons, who stood before the jury in the attitude of unfaithfulness even to their alleged confederate in crime (Tompkins v. State, 7 Ala.App. 140, 61 So. 479), was filled with vitally conflicting declarations as to what happened both before and after the admitted robbery by them of their victim. And yet upon this wholly unsatisfactory testimony, Leo Bailey, this appellant, was declared guilty of the offense with which he was charged by the jury before whom he was tried. In reach-

ing their verdict of guilt against said defendant it is apparent that the trial jury must have entirely ignored and disregarded the testimony of the defendant, and that of his witnesses, which testimony said jury had no legal right or authority to capriciously reject. Holland v. State, 29 Ala.App. 181, 194 So. 412.

 The law and rules of evidence of force and effect in this State under which one accused of crime may be legally convicted upon the testimony of an accomplice, or accomplices, are of long standing. It is established by the decisions of this court and of our Supreme Court that:

1. It is the duty of the trial court to first determine whether or not any evidence has been introduced upon the trial of the case that corroborates the testimony of the accomplice. Read v. State, 195 Ala. 671, 71 So. 96; Mitchell v. State, 28 Ala.App. 119, 180 So. 119.

2. Before the conviction of one accused of a felony can be legally obtained upon the testimony of an accomplice that testimony must be corroborated by other evidence and the corroborative evidence must tend to connect the defendant with the commission of the felony charged. Code of Alabama 1923. § 5635, Code 1940, Tit. 15, § 307; Kemp v. State, 24 Ala.App. 591, 139 So. 437; Slayton v. State, 234 Ala. 9, 173 So. 645; Parce v. State, 26 Ala.App. 492, 164 So. 114.

3. The corroborating evidence must be proven beyond a reasonable doubt. Freeland v. State, 28 Ala.App. 268, 182 So. 414; Slayton v. State, 234 Ala. 9, 173 So. 645; McDaniels v. State, 162 Ala. 25, 50 So. 324; Cobb v. State, 20 Ala.App. 3, 100 So. 463.

 4. The probative force and credibility of corroborating testimony is for the jury. Read v. State, supra; Freeland v. State, supra; Slayton v. State, supra; Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712.

The trial court did not charge the jury that the court had determined that there was sufficient corroborating testimony of the testimony of the accomplice to justify or require the court to submit the question of the guilt, vel non, of the defendant upon the whole evidence to the jury for its determination, as it had the right to do, Read v. State, supra, but the trial court charged the jury as follows:

"So then now how are they corroborated? What is the corroborating testimony. You look to this testimony, gentlemen of the jury, remembering it as is your duty to do, and separate from what these two witnesses said that part of this testimony, coming from whatever source it does come, that tends to corroborate them. For instance, as has been indicated to you, the testimony of the people down at the pool room, or the person it was—I believe it was only one— who testified that on the night that this was robbed that this defendant called for this witness who has testified, Otis Reed. Well, there is some other testimony tending to connect Leo Bailey with the pistol, with the ownership of the pistol that was used at the time to intimidate or to put in fear Mr. Adams. There is some testimony tending to show that these persons were down there at Breeze's Inn that night as testified to by those men. Now you take this testimony and determine whether or not you believe that this testimony connects Mr. Bailey with the commission of the offense. You have to believe the corroborating testimony, gentlemen of the jury, first before you believe what these two men say, these two State witnesses."

It will be noted from the quoted excerpt from the trial court's oral charge that the court first instructed the jury that the testimony of the witness (Gaines Morris), who, said the court, testified "that on the night that this was robbed (meaning on the night that the robbery was committed) this defendant called for this witness who has testified, Otis Reed."

And again it will be noted from said excerpt of said charge that the trial court instructed the jury, "There is some testimony tending to connect Leo Bailey with the pistol, with the ownership of the pistol that was used at the time to intimidate or to put in fear Mr. Adams."

Again it will be noted that the court after stating that "There is some testimony tending to show that these persons were down there at Breeze's Inn that night as testified to by those men" specifically charged the jury: "Now you take this testimony and determine whether or not you believe that this corroborating testimony connects Mr. Bailey with the commission of the offense."

It is true that no exceptions are shown by the bill of exceptions to have been taken to any part of the court's oral charge, but

it may not be amiss to say that the quoted excerpts from the court's oral charge instructed the jury that the three portions of testimony to which the attention of the jury was specifically called was "corroborating testimony" and the only question submitted to them in that phase of the case was, "whether or not you believe that this corroborating testimony connects Mr. Bailey with the commission of the offense."

■ Under the decisions of this court and of our Supreme Court the probative force of any testimony offered in corroboration of the testimony of an accomplice, as well as its credibility, is for the jury and not for the court. Further the probative force of said testimony is not that it shall cause the jury to believe that the corroborating testimony connects the accused with the commission of the offense, but the probative effect of this testimony must be so strong as to convince the jury beyond a reasonable doubt that the corroborating testimony tends to connect the accused with the commission of the offense charged.

■ It is further to be observed with respect to the quoted excerpt from the trial court's oral charge that in our case of Tarver v. State, 17 Ala.App. 424, 85 So. 855, 857, this court said: "Judges of trial courts are required to avoid the use of any phrase or expression which might impress the jury that * . * * any vital fact which they should determine is established by the evidence."

With respect to the defendant's calling for the witness, Otis Reed, at the pool room in the early part of the night of the robbery and with respect to the defendant being at Breeze's Inn on the night of the robbery, this court in the case of Commander v. State, 28 Ala.App. 42, 178 So. 241, 244, said:

"The fact that the defendant, Ted Commander, was seen with Grover Sasser and Dan Houston, at Barr's Filling Station, in the afternoon of the night of the commission of the alleged crime, which from the testimony was committed several hours thereafter, is no corroboration of the accomplice's testimony as was expressly decided by the court in the case of Kemp v. State, 24 Ala.App. 591, 139 So. 437. In said case this court stated: 'Evidence that accused was seen driving about streets with accomplice, and finally in direction of accused's home, on night of burglary, held insufficient corroboration of accomplice to sustain conviction of grand larceny (Code 1923, § 5635).'"

As to the pistol about which the court charged the jury as shown by the above quoted excerpt, the bill of exception shows that Joe Huguley testified that he received the pistol with which he attempted to intimidate Mr. Adams from Leo Bailey, the defendant.

The State introduced a witness, Mr. James McBride, who testified with reference to said pistol as follows:

"I have seen a pistol before that resembled this one now shown to me; I don't know whether it is the same one or not. * * * There was and is something particularly about that pistol that directs its attention to me, and that is it is hard to unbreech. Mr. Leo Bailey handed me a pistol sometime prior to the robbery; I really don't know how long before the robbery it was; it was maybe two months; I examined the pistol that he handed me; I say it looked like that pistol; I noted particularly when I examined that pistol that it was hard to·unbreech and this one here is hard to unbreech; I kept that pistol Mr. Bailey handed to me six or seven days. I don't know just how long it was afterwards but he (the sheriff of Lee County) brought it up there in the car and he asked me if I had ever seen a gun like that and I told him I had, one that resembled like it. He said where did I see it. I said that is like one I kept for Leo Bailey. (an objection was interposed to the last above statement and it does not appear that Leo Bailey, the appellant, was present at the time said statement was made)."

On cross examination, the witness testified that he did not know that the pistol about which he was then testifying was the same pistol that he had previously kept for Mr. Bailey; that he couldn't swear it, and that he was not telling the jury that it was the same pistol that Bailey brought to him, but that it looked like the one. And as to this, this witness further testified as follows:

"This other pistol that you now exhibit to me looks like it is the same make, but it don't look like it is the same pistol; as to what is the difference, the sight is too far back; you can't unbreech it hardly; the pistol first exhibited to me was hard to unbreech; that is the reason I noticed it; I notice another thing about this pistol; it

don't look like the one; it resembles this one, but the one I kept the sight wasn't that far back. I kept it 6 or 7 days. I examined it good. I just looked at it because it was an outlaw gun. I don't know how many times I looked at it. I do tell the Court and Jury that this pistol looks like it; I don't know that it was the same one; I couldn't swear it was the same pistol."

As noted above, the witness Joe Huguley testified that he received the pistol in question from the defendant. It was the right of the defendant to contradict or impeach this testimony and in the exercise of this right the defendant offered in evidence in connection with the testimony of the witness, Pinkard, and in connection also with the testimony of the defendant himself a pistol that Robert Pinkard testified that he had previously sold to the defendant. The defendant testified that the pistol introduced by the State was not his property; that he had never owned it; that the first time he ever saw it was at his first trial; that the pistol identified by the witness, Robert Pinkard, was the pistol of the defendant, and thereupon he offered said pistol in evidence. The trial court sustained the State's objection to the introduction of said pistol in evidence and to this action of the trial court the defendant then and there duly and legally excepted.

██ Both of these pistols have been properly certified from the lower court to this court, in connection with and as a part of the record in this case. This court has examined both of said pistols and find that they are of the same make, the same finish, the same calibre, the same length, the same size and practically of the same weight. They both have the same peculiarities of operation, that is, they are both hard to unbreech. They are practically identical in every way. It is the opinion and judgment of this court that the trial court committed reversible error in refusing to admit in evidence the pistol offered by the defendant, Leo Bailey, as above stated.

██ The rule governing the admissibility in evidence of property belonging to one accused of crime is stated in 22 C.J., 2d § 710, as follows: "Accused is entitled to introduce property belonging to him to impeach testimony of prosecution witness, but an article offered by accused which is not material to the issue is properly excluded."

This court is not impressed with the argument made in brief by the Attorney General with respect to this question in which argument it is said:

"The trial court did not err in refusing to admit into evidence the pistol offered by the defendant. This pistol was not connected with the commission of the crime and could, in no way, be considered a part of the res gestae. However, even should this be error, it would certainly be harmless error and not prejudicial to the rights of the defendant. The pistol was exhibited to the witness, McBride, who explained the difference between it and the other pistol to the jury. The pistol was apparently in full sight of the jurors and the defendant undoubtedly received full benefit of the comparison of the two pistols. The Supreme Court Rule 45."

We think the fallacy in the above argument is shown by its statement. The defendant offered in evidence his pistol. The court refused its introduction and thereby in effect said to the jury you have no right to consider this pistol in evidence; although you have seen it here in the hands of counsel, you have no right to inspect it or examine it; you have no right to say whether or not it "resembles" or "looks like" the pistol offered in evidence by the State which is said to "resemble" or "look like" the pistol left with the witness, McBride, by the defendant; you have no right to see and determine whether or not there is any substantial difference either in appearance, size, calibre, length, make, or difficulty of operation between these two pistols.

After the judgment appealed from was pronounced against the defendant by the trial court, the defendant filed in said court his motion for a new trial, in which he alleged among other grounds, the following: 1. That the verdict of the jury was contrary to the evidence; 2. That the judgment of guilt pronounced against the defendant was contrary to the law and the evidence; 3. That the verdict of the jury was the result of prejudice, bias and ill will, one or all of the jury against the defendant, and 4. That the defendant did not receive a fair trial before an impartial jury.

██ The motion of the defendant for a new trial and the judgment of the trial court thereon, refusing the same, after the defendant had introduced in support of said motion all of the evidence taken upon the trial of the case, is in form and substance such as to require the court to review and consider all of the evidence, set out in the bill of exceptions, upon which the defendant

was tried in the court below, to determine whether or not the trial court erred in overruling and denying said motion.

■ With respect to the defendant's motion for a new trial, it is proper to say that this court has read, studied and considered the entire evidence sitting en banc, and while this court will not burden this record with a full narration of all the testimony, it appears that the testimony offered by the defendant in rebuttal of that offered by the State, or in reply thereto, tends to show in substance that all of the facts to which Joe Huguley and Otis Reed have testified, and to all of the other testimony offered by the State, tending to connect the defendant with the commission of the offense charged was untrue and that the same was insufficient to sustain or justify a conviction at the hands of the jury against the defendant who was shown by said testimony introduced by him to be a man of good character.

In addition to the material and vital conflicts in the testimony of the two witnesses, Joe Huguley and Otis Reed, the State introduced another witness, James Quinton, whose testimony in the opinion of this court tends to show that the entire story related by Joe Huguley and Otis Reed of the defendant's connection with the robbery of Mr. Adams was untrue, unworthy of belief and furnished no sufficient justification for the verdict of the jury against the defendant.

Joe Huguley and Otis Reed both testified that they were carried to Breeze's Inn by Mr. Bailey in the latter's automobile. The said Huguley testified that when the car left West Point, Georgia, Mr. Bailey, a woman and another white man (shown to be Mrs. Bailey and Mr. C. H. Payne) occupied the front seat and that he (said Huguley) and Otis Reed occupied the back seat; that they drove from West Point, Georgia, to Langdale, Alabama, where Mrs. Bailey got out of the car and that the four of them (Mr. Bailey, Mr. Payne, Huguley and Reed) then continued on their journey passing through Fairfax, Ala., without stopping and on to Breeze's Inn where Mr. Bailey and Mr. Payne got out of the car and went inside.

Otis Reed testified that when the car left West Point, Ga., the only occupants of the car were Mr. and Mrs. Bailey, occupying the front seat and Joe Huguley and Otis Reed occupying the back seat; that from West Point they went to Fairfax, where Mrs. Bailey got out of the car and that from Fairfax the three of them went on to Breeze's Inn where Mr. Bailey got out of the car and went inside of that place of business. Both of these witnesses testified that they were left alone in the car while it was parked at Breeze's Inn. They both testified in substance that Mrs. Bailey did not go to Breeze's Inn on that occasion and that she was not an occupant of the car while it was parked there.

The State's witness, James Quinton, testified that he was at Breeze's Inn on the night that Mr. Bob Adams was robbed; that at some time between 11:30 and 12:30 o'clock that night,—

"I saw he (Mr. Bailey) and his wife out there at the car and I don't remember whether he was in the car or getting out of the car; that was not about 1:00 or 1:30; I had left before that time."

This witness further testified that the robbery was around 1 and that he left the place about the time that the robbery happened; that Mr. Adam's wife came down there and told them about the time the robbery happened.

On cross-examination said witness further testified that: "I was down there at Breeze's on that Saturday night and I left there around 1:00 or right about the time the robbery happened; I saw Mr. Bailey there that night; I believe on the outside. I saw Mr. Bailey's wife there in the car at Breeze's Inn and I spoke to her; she was there in the car and the car was parked there."

It is useless to extend this opinion with a further discussion of the testimony. After a careful study of that evidence and after allowing all reasonable presumptions in favor of the correctness of the verdict of the jury in the court below, it is the opinion and judgment of this court that the preponderance of the evidence against the verdict is so decided as to clearly convince this Court, that it is wrong and unjust, and to let such conviction stand would, in the opinion and judgment of this court be unconscionable. Bufford v. State, 25 Ala.App. 99, 141 So. 359; Wilson v. State, ante, p. 126, 3 So.2d 136; Gilbert v. State, ante, p. 214, 3 So.2d 95, 96.

It is the opinion and judgment of this Court that the trial court also committed reversible error in overruling and denying the defendant's motion for a new trial.

For the errors pointed out the judgment of the trial court is hereby reversed and the cause remanded.

Reversed and remanded.