42 So.2d 591

## COATS v. STATE.

### 8 Div. 674.

Court of Appeals of Alabama.
July 19, 1949.

Rehearing Denied Aug. 15, 1949.

W. A. Barnett, of Florence, for appellant.

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

578

CARR, Judge.

The defendant below was convicted of having illegal whiskey in his possession.

The court in his oral charge delineated and discussed the evidence in detail.

Exceptions were timely reserved to the following excerpts:

"Did he go five miles and a half that night after midnight to Floyd Coats' house and carry with him a pint of whiskey, or did he go there to get whiskey."

"Now the State offers Eugene Jackson who tells you that he came to get his brother. Where did he come? How did he know to go there?"

"Did they go to get liquor as the State's Witness Grady Jackson says they did get out there; or did they go to pay a $3.00 bill that one of the boys owed Floyd Coats, and did they get him up out of bed at that time of night to pay him the $3.00 and then stay all night the balance of the night—was all they did out there play some pinochle the rest of the night?"

We will discuss these questions collectively. Each of them presents legal doctrines which are similar in effect.

It appears from the State's evidence that the witness Grady Jackson went to the home of the appellant and reached there after midnight on the night in question. He walked from his home, a distance of about five and one-half miles. Soon after his arrival four other men came in a taxi. The entire party remained at the defendant's home until early next morning. At this time Grady Jackson's brother, Eugene, came and carried Grady home. The latter was in a drunken condition.

Grady testified that he did not carry any whiskey with him to the appellant's home, but that a quantity of whiskey and beer was furnished the party by the appellant.

According to the testimony of some members of the group who came in the taxi, the purpose of their visit was to pay a debt of $3 to the defendant. They did and remained the rest of the night and played pinochle.

The appellant and others who were there, including defendant's wife and son, testified that Grady Jackson brought a pint of whiskey with him and that there was no other liquor or beer in the home on that occasion. These witnesses also testified that only Grady drank during the lengthy visit.

We have delineated the tendencies of the evidence with a view of illustrating and clarifying the purports of the excerpts which we have herein copied from the court's oral charge.

We cannot escape the truism that the jury is very prone to lend an attentive ear to every statement and observation which the trial judge makes. This is particularly true as it relates to an indicated view of the judge's opinion of the guilt or innocence of an accused in a criminal case.

Therefore judges of our trial courts should diligently avoid the use of any expression or phrase which might inject such an impression into the trial of the cause. Tarver v. State, 17 Ala.App. 424, 85 So. 855; Bailey v. State, 30 Ala.App. 374, 8 So. 2d 202.

"The court should so frame its oral charge as not to subject it to the criticism of it being the court's conclusion from facts in dispute." George v. State, 240 Ala. 632, 200 So. 602, 607.

"So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. Not only the evil, in such cases, but the appearances of evil, if possible, should be avoided." Craig & Co. v. Pierson Lumber Co., 169 Ala. 548, 53 So. 803, 805.

See also, Simmons v. State, 171 Ala. 16, 54 So. 612.

Some of the indicated excerpts from the court's oral charge involve suggestions and intimations by the trial judge which cast discredit on the defendant's claim of his innocence. At least, there are pointed inferences that appellant's position is of doubtful verity and not consistent with events as they ordinarily occur. It is our view that the jury could have placed this interpretation on some remarks contained in the assertions.

The Assistant Attorney General insists that the express provisions and man-

dates of Sec. 270, Title 7, Code 1940 were not violated in the matter of instant concern. The decision of the inquiry does not necessarily depend on the accuracy of this position. Fundamentally and inherently the accused was entitled to a trial which was free from prejudicial and harmful influences. When it appears that this privilege was not accorded, and the questions are properly presented for review, it becomes the duty of the appellate court to reverse a judgment of conviction obtained under such circumstances.

There are matters to which we have not responded. Some of these are not sufficiently meritorious to warrant discussion. Others will not likely reoccur in the event of another trial.

For indicated error the judgment of the court below is reversed and the cause is remanded.

Reversed and remanded.

BRICKEN, Presiding Judge, not sitting.