269 So.2d 168

**Robert Edward CALLOWAY, alias**

**v.**

**STATE.**

**5 Div. 79.**

Court of Criminal Appeals of Alabama.

Nov. 14, 1972.

**152**

———◆———

Charles M. Ingrum, Opelika, for appellant.

William J. Baxley, Atty. Gen., and Charles R. Hare, Jr., Special Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Lee County, Alabama, charged the appellant with robbery. The Jury found the appellant guilty as charged, and verdict and judgment set sentence at fifteen years imprisonment in the penitentiary.

The facts of this case are substantially set out in appellee's brief as follows: [1]

"On May 31, 1971, out of the presence of the jury, testimony was taken on the Appellant's motion to suppress certain of the State's evidence. The Appellant testified himself and offered the testimony of Officer Charles Beasley. Testimony in substance was that the Appellant was arrested February 16, 1971, the day following the alleged robbery. The Appellant made a request to the Chief of Police that he be allowed a line-up, and he was allowed to call his brother, who procured four other people for the line-up. The Appellant testified that he was advised of his rights, that he understood his rights and that he signed a waiver of his rights. Appellant also testified that he was advised of his rights concerning the line-up and that he signed a voluntary consent for the line-up and insisted on the line-up.

"The testimony concerning the line-up was substantially that the Appellant was wearing brown pants and white knit shirt with brown collar, the same clothes he was wearing at the time of his arrest; that the other men were wearing street clothes and that none of the men were required by the police to change

---

1. Some of the facts appearing in appellee's brief have been deleted; some additional facts have been added.

clothes or wear any other particular costume. The defendant had a beard and heavy sideburns and two of the men in the line-up had beards and mustaches. A picture was admitted into evidence of all of the men in the line-up except the Appellant. The Court then overruled the Appellant's motion to suppress, and the State proceeded to present its case to the jury.

"In the trial of the case the State called three witnesses, James Michael Owsley, Lieutenant Charles Beasley of the Opelika Police Department and Detective Gerald Fitzgerald of the Opelika Police Department, whose testimony is basically summarized as follows. The witness Owsley was a night employee of Dixie Vim Service Station, which service station is in Lee County, Alabama, and is owned by Southern Oil Stores, Inc., a Corporation; that on the night of February 15, 1971, between 9:00 and 9:30 P.M., the Appellant and one other man entered said service station, the Appellant holding a pistol in his hand, and forced the witness and three other men present to lie on the floor of the service station; that the witness saw the Appellant's face and saw the Appellant take from the pocket of one Roy Aston, another employee, $125.00, which money belonged to said corporation; that he described the Appellant to the police and picked from approximately three hundred pictures, a photograph of the Appellant; that witness Owsley identified overalls with paint on them as being the overalls worn by the Appellant on the night of the robbery, said overalls having been recovered from the home of the Appellant by the Opelika Police by the use of a search warrant; and that witness Owsley had identified the Appellant in a line-up after having selected his photograph from approximately three hundred other photographs, but that his identification of the Appellant in the courtroom was based solely on his observation of the Appellant on the evening of the robbery.

". . . In summary, the defense testimony was that the Appellant and Shirley Ann Thomas went to the home of Evelyn Walker at approximately 5:30 or 6:00 P.M. on February 15, 1971; that present in the Walker home were Evelyn Walker, Esco Calloway, Rita Pope, Harvey McKay, Betty Lockhart and family, Shirley Ann Thomas and the Appellant; that the Appellant left the Walker home at approximately 8:00 P. M., but returned at approximately 9:00 P.M., and that from 9:00 until 11:00 P. M., the defendant was at Evelyn Walker's home. . . ."

The appellant took the stand and testified that he did not rob the Dixie Vim Service Station; that he could not have done so because he was at the home of Evelyn Walker at the alleged time the robbery was committed.

Appellant further testified that the overalls found at his home and identified as being the ones worn by the robber on the night in question did not belong to him but belonged to his brother.

### I

When this case was called for trial, the defendant filed a motion to suppress the testimony of the State's witnesses as to any in-court identifications of the accused, contending that it would be error to allow witnesses at trial to make in-court identifications of the accused after having previously viewed the accused in a line-up conducted without counsel being present. Further, appellant contended that such line-up proceeding was conducted in such a manner as to focus attention on him, thus denying him due process of the law. After hearing testimony on said motion, outside the presence of the jury, the motion was overruled. Subsequently, at trial, in-court identifications of the accused were allowed.

In the first place, it is doubtful that appellant was entitled to a lawyer's presence at his line-up proceeding in view of the United States Supreme Court's plurality opinion in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, which has apparently limited the right to counsel at line-up proceedings to those conducted after indictment.

In the second place, appellant was not "a victim of forced identification," as counsel for appellant contends in brief, as the record clearly shows that appellant not only requested the line-up himself—indeed, he insisted upon it—but was allowed to arrange through his brother precisely who the other participants in the line-up would be. These circumstances, in our opinion, preclude appellant from arguing any prejudice due to the lack of resemblances between himself and others participating in the line-up.

Thirdly, appellant, who was shown to have a twelfth grade education, testified at the hearing on motion to suppress that he was advised that he had a right to have an attorney present during such line-up, and that he voluntarily signed a waiver of counsel form in relation thereto, such form being introduced into evidence.

The Supreme Court has held that such rights may be waived, if done so intelligently. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 19 L.Ed.2d 1149.

Fourthly, there is testimony by State's witness James Owsley, who was present when the robbery occurred, that his in-court identification of the accused was based on his observation of the accused on the night of the robbery and not from his observation of the accused at the line-up. This is significant in that the United States Supreme Court has held that where the in-court identification of the accused has an independent origin, the prior identification at a line-up where the accused was not represented by counsel does not constitute reversible error. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

It is also of importance that: (1) The time between the robbery and the line-up was short. The robbery took place at approximately 9:30 P.M. on February 1st, and the line-up was conducted at 3:00 P.M. on the following afternoon; (2) the victim had not failed to identify the appellant at a prior line-up; (3) the victim had not identified anyone other than the appellant before the line-up. See Robinson v. State, 45 Ala.App. 236, 228 So.2d 850.

Based on all of these factors, we are convinced that the line-up here did not result in any unfairness or prejudice to the appellant, and the trial judge ruled correctly in overruling appellant's motion to suppress all in-court identifications.

II

Appellant next contends that the Jury's verdict was against the great preponderance of the evidence, "as witness after witness took the stand and testified that the appellant was at the home of Evelyn Walker and with other people at the time the Dixie Vim Service Station was robbed."

■ Of course, while the jury may not arbitrarily reject the testimony of the accused and that of his witnesses, Bailey v. State, 30 Ala.App. 374, 8 So.2d 202, without here reiterating all the evidence elicited by the State which tends to establish appellant's guilt, we are of the opinion that there is ample evidence appearing in the record to make this a question for the jury and also to support this conviction as against the defense of alibi. McColston v. State, 20 Ala.App. 591, 104 So. 347; Dorch v. State, 40 Ala.App. 475, 115 So.2d 287; Chamberlain v. State, 48 Ala.App. 254, 263 So.2d 709.

We have carefully reviewed the record in this case as required by Title 15, Section 389, Code of Alabama 1940, Recompiled 1958. We find no error therein, and the judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.