# CASES

# SUPREME COURT OF ALABAMA,

## NOVEMBER TERM, 1896.

## *Ex parte* **Thomas.**

### *Application for Habeas Corpus.*

1. *The Code and its adoption; sections containing inconsistent provisions not within the letter or spirit of the inhibition of the Constitution, Article IV, § 2.*—The Code of laws .of this State, adopted by a single act of the legislature, entitled "An act to adopt a Code of laws for the State of Alabama," though it may contain inconsistent or repugnant provisions, or one section or part may be modified, and to the extent of the modification controlled by another, is not within the letter or spirit of the constitutional provision, (Const., Art. IV, § 2) providing that no law "shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

2. *Same; construction of sections 4492 and 3789 of the Code of 1886, as relating to each other.*—Section 4492 of the Code of 1886, requiring that in all cases in which the imprisonment or sentence to hard labor is 12 months or less, the criminal must be sentenced to imprisonment in the county jail, or to hard labor for the county, to this extent repeals, by implication, the requirement of section 3789, that in such cases, on conviction of grand larceny, the imprisonment must be in the penitentiary.

3. *Larceny; judgment of conviction; proper sentence to hard labor for the county; habeas corpus.*—Where a defendant in a criminal case is convicted of the offense of grand larceny, the court has power and authority to sentence him to hard labor for the county for 12 months, and his services at hard labor under such a sentence is legal punishment; and an application by a prisoner to be discharged on a writ of *habeas corpus*, on the ground that he was illegally detained, in that, upon conviction for grand larceny, he could only have been sentenced to the penitentiary, should not be granted.

1

*[Ex parte Thomas.]*

The facts of the case are sufficiently stated in the opinion.

R. B. EVINS, J. B. HENDON and J. H. STEWART, for petitioner.—Section 4492 of the Code of 1886 is an amendment to section 3789 of the Code of 1886.—*Gunter v. State*, 83 Ala. 101 ; *Zaner v. State*, 90 Ala. 651.

In *Gandy v. State*, 86 Ala. 20, it is held that for a statute to come within the meaning of Article IV, section 2, of the Constitution of Alabama, it need not purport to be an amendment, but its amendatory character must be such that it is unintelligible unless considered in connection with the statute it amends. The amendatory character of section 4492 is patent. Alone it is absolutely inoperative. No judicial function could be performed under its provisions alone. It provides a penalty for no specific violation of law and prohibits nothing. Separated from other sections, it is meaningless and wholly inoperative. Whatever power it has is derived from its connection with other statutes. From its very nature and essence it is, as held in authorities above cited, an amendment.

Section 4492 being an amendment and failing to re-enact and publish at length the sections amended, is violative of Article IV, § 2, of the Constitution of Alabama, and, therefore, void.—*Bay Shell Road Co. v. O'Donnell*, 87 Ala. 386 ; *Judson v. Bessemer*, 87 Ala. 240.

WILLIAM C. FITTS, Attorney-General, *contra*.—Section 4492 of the Code is clearly construed in *Gunter v. State*, 83 Ala. 100 ; *Zaner v. State*, 90 Ala. 651. Even admitting that it is an amendment to section 3789 of the Code, it would be valid because it does not seek to revive, amend or extend the previous law—Section 3789—"by reference to its title only." Section 4492 makes no mention directly of section 3789. It makes no reference to its title whatever. But *Gunter v. State, supra*, says it "must be construed to modify and amend it, so far as there may be any necessary conflict or incongruity between the provisions of the two statutes."

We submit that no one section of the Code of 1886 can be considered an amendment of any other section of said Code, in the manner which section 2 of Article IV of the

[*Ex parte* Thomas.]

State Constitution prohibits amendments. Every section of the Code became the law at the same instant, to-wit, December 25, 1887; and as to transactions since that date it can not be considered that any one section was the law before any other section.

BRICKELL, C. J.—At the fall term 1896, of the circuit court of the county of Perry, the prisoner was convicted of the offense of grand larceny, and was sentenced to hard labor for the county for a term of twelve months, and, judgment for the costs not having been confessed, to serve an additional period in payment of them. Proceeding on the theory, that the circuit court had not power or jurisdiction, on a conviction of grand larceny, to sentence to hard labor for the county—that it was not a legal punishment for the offense—application was made on *habeas corpus*, to a judge of the circuit court for the discharge of the prisoner from the custody of the hirer of county convicts. The application was refused by the circuit judge, and is now renewed in this court.

The statute, (Cr. Code of 1886, § 3789), defines and describes grand larceny, and its concluding clause is, that on conviction, the offender "must be imprisoned in the penitentiary for not less than one year, nor more than ten years." A succeeding section declares : "The only legal punishments, besides removal from office and disqualification to hold office, are fines, hard labor for the county, imprisonment in the county jail, imprisonment in the penitentiary, which includes hard labor for the State, and death by hanging." The last clause of the section reads : "And in all cases in which the imprisonment or sentence to hard labor is twelve months, or less, the party must be sentenced to be imprisoned in the county jail, or to hard labor for the county."—Cr. Code of 1886, § 4492. The proposition advanced in support of the application is, that this section is amendatory of the preceding section, declaring that the punishment of grand larceny must be imprisonment in the penitentiary, and is violative of the clause of the second section of the fourth article of the constitution, providing that "no law shall be revised, amended, or the provisions thereof extended or conferred, by reference to its title only ; but so much thereof as is revised, amended, extended, or conferred, shall be re-enacted and published

..at length." This clause of the constitution has been
the matter of frequent interpretation and construction.
The exposition of the evil in legislation it was intended
to prevent, made by Judge Cooley, has been generally,
if not universally accepted : "The mischief designed to
be remedied, was the enactment of amendatory statutes
in terms so blind that legislators themselves were some-
times deceived in regard to their effects, and the public,
from the difficulty of making the necessary examination
and comparison, failed to become apprised of the
changes made in the laws. An amendatory act which
purported only to insert certain words, or to substitute
one phrase for another in an act or section which was
only referred to, but not published, was well calculated
to mislead the careless as to its effect, and was, perhaps,
sometimes drawn in that form for the express purpose.
Endless confusion was thus introduced into the law, and
the constitution wisely prohibited such legislation."—
Cooley Const. Lim., 181 ; *People v. Mahaney*, 13 Mich.
497. A Code, or body, or system of law, adopted, or
enacted by a single act of the General Assembly, though
it may contain inconsistent or repugnant provisions, or
one section or part may be modified, and to the extent
of the modification controlled by another, is not within
the letter or spirit of the mandate of the constitution ;
it is not within the legislative evil it is designed to re-
move, nor can it be supposed that it was within the con-
templation of the framers of the constitution. Though
for convenience, the Code is published in two volumes,
the one pertaining entirely to that which may be termed
civil, and the other to that which may be termed crim-
inal legislation, was adopted by a single act, entitled
"An act to adopt a Code of laws for the State of Ala-
bama." (Code, p. 1). The generality of the title of
the act is expressly authorized by the Constitution ; the
authorization, probably, proceeding from abundant
caution, for in the first construction of the constitutional
requirement, that each law should embrace but one sub-
ject, which should be described in its title, it was said
by A. J. WALKER, C. J.: "The constitution requires
that only one subject should be embraced, and that it
should be described in the title. *Subject* is a very indef-
inite word. A phrase may state the *subject* in a very
general or indefinite manner, or with minute particu-

[*Ex parte* Thomas.]

larity. The *subject* of laws with such titles as the following : 'To adopt a Penal Code,' 'To adopt the common law of England in part,' 'To adopt à Code of laws,' 'To ratify the by-laws of a corporation,' would be expressed in a very general way, and very little knowledge of the specific provisions of the laws could be gleaned from the title ; yet it would nevertheless be true that the subject was described in the title."—*Ex parte Pollard*, 40 Ala. 98. Before the generality of title was expressly authorized by the Constitution, the Revised Code of 1867 was adopted by an act bearing the title, "An act to provide for the adoption, printing and distribution of the Revised Code of Alabama ;" and it was never suggested that thereby the requirement of the constitution was offended.

The great body of the Code, civil and criminal, though there may be the occasional introduction of new legislation; consists of pre-existing statutes. There may be, in some of them, slight changes of verbiage or phraseology, not necessitating a change of the construction they had received, or of the construction they would, in accordance with the general canons of construction, receive. There was not an instant of time, from the day of their original enactment, until the Code became operative, that they had not force and effect; their vitality was never suspended or lost. When the Code became operative, these statutes were not in any proper sense revived, for the continuity of their existence had never been interrupted or broken. The Code, approximates very nearly to the definition of the title it bears, and which since the adoption of the Code of 1852 has been the title applied in the digesting and revision of the statutes of the State : "A body of laws established by the authority of the State, and designed to regulate completely, so far as a statute may, the subjects to which it relates."—*Hendon v. White*, 52 Ala. 597. If there be contrariety, or repugnancy, or inconsistency, in any of its parts, as may exist in any body or system of laws, or as not infrequently exists in statutes enacted at different periods, the courts are under the duty of interpreting and construing them, rendering them harmonious and consistent if possible, or if that be not possible, declaring which shall prevail. But there is no room or reason for drawing them within the influence of the constitutional inhibition.

The section of the Code, 4492, which is supposed to be amendatory of section 3789, was first introduced by the Penal Code of 1866, and was carried into the Revised Code of 1867. Its original reading was: "The only legal punishments in this State, besides removal from office and disqualification to hold office, are, fines, hard labor for the county, imprisonment in the county jail, imprisonment in the penitentiary, and death by hanging."—Revised Code of 1867, § 3755. On the 7th March, 1876, the General Assembly enacted a statute, entitled "An act to provide for the punishment of persons convicted of crimes in certain cases."—Pamph. Acts, 1875–76, p. 287. The statute in itself was original in form, complete and intelligible. In the codification of 1876, it was incorporated as part of the corresponding section of the Revised Code of 1867, declaring the legal punishments prevailing in this State, and in that form was translated into the present Code. The manner in which it was incorporated into the revision or codification of the statutes, there being no material change in its words, does not affect its essential nature and character; that remains as impressed by the legislature in its enactment. In *Ex parte Pollard*, *supra*, and in *Tuskaloosa Bridge Co. v. Olmstead*, 41 Ala. 18, it was said: "It was never intended by the constitution that every law which would affect some previous statute of variant provisions on the same subject should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate. The constitution relates to those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws, by additions or other alterations, which, without the presence of the original, are usually unintelligible. If a law is in itself complete, and original in form, it does not fall within the spirit and meaning of the constitution." The same principle is announced in *Falconer v. Robinson*, 46 Ala. 340; *Candy v. State*, 86 Ala. 20; *State v. Rogers*, 107 Ala. 444. Another principle applied in the construction of this constitutional requirement, is, that statutes amendatory of others by implication are not within its influence.—Cooley Cons. Lim., 182; Sutherland Stat. Cons., § 135. The operation and effect of section 4492, is to require that in all cases in which the imprisonment

[Daughdrill v. The State.]

or sentence to hard labor is twelve months, or less, the offender must be sentenced to imprisonment in the county jail, or to hard labor for the county; to this extent it repeals by implication the requirement of section 3789, that in such case, on conviction of grand larceny, the imprisonment must be in the penitentiary.

The judgment and sentence of the circuit court was in conformity to law; the prisoner was rightfully in custody of the hirer of county convicts, and the application for *habeas corpus* must be denied.

*Habeas corpus* denied.