[Read v. The State.]

# Read v. The State.

### Murder.

(Decided February 10, 1916.  71 South. 96.)

1. **Jury and Jurors; Variance in Name; Contiuance.**—Under § 32, Acts 1909, p. 320, the fact that one of the veniremen named Walker L. Brooks was drawn and summoned under the name of Walter L. Brooks, and so noted on the copy served on defendant, would not justify a continuance as it would be presumed to be merely a mistake, in the absence of evidence to the contrary.

2. **Criminal Law; Admissions; Confessions; Distinction.**—There is a well defined distinction between inculpatory admissions of collateral facts by a defendant, and confessions or admissions in the nature of confessions of actual guilt.

3. **Evidence; Inculpatory Admissions; Predicate.**—Conversations had by defendant with state witnesses in the nature of inculpatory admissions of collateral fact, and not confessions of guilt, were admissible without a predicate of voluntariness, they being prima facie voluntary.

4. **Same; Accomplices; Corroboration.**—The evidence examined and held to warrant a conviction independent of the testimony of an accomplice.

5. **Charge of Court; Accomplices; Corroboration.**—In this case a charge that there was sufficient corroborative evidence of the accomplice to submit the question of guilt, and that the question whether such evidence had been sufficiently corroborated to warrant a conviction was for the jury, was proper.

APPEAL from Bullock Circuit Court.

Heard before Hon. M. SOLLIE.

Butler Read was convicted of homicide in the first degree, and he appeals. Affirmed.

T. S. FRAZIER, for appellant.  W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

SOMERVILLE, J.— (1) One of the veniremen, Walker L. Brooks, was drawn and summoned under the name of Walter L. Brooks, and was so noted in the copy served on defendant. Defendant seasonably moved for a continuance of the cause on this ground, which motion was overruled. He moved the court to quash the venire on the grounds that the jury list was not properly selected by the commissioners, and that they did not purge the jury box of names illegally placed therein. Defend-

ant's rights with respect to this venire, no fraud or corruption appearing, were qualified by section 32 of the jury law (Special Sess. Acts 1909, pp. 405, 320), as follows: "If the sheriff fails to summon, or any juror summoned fail or refuse to attend the trial, or there is a mistake in the name of any juror drawn or summoned, none, or all, of these grounds shall be sufficient to quash the venire or to continue the case."

In the absence of proof to the contrary, it must be presumed that the variance complained of was merely a mistake, and defendant's motions were therefore properly overruled.

(2) There is a well-defined distinction between inculpatory admissions by a defendant of collateral facts, and confessions, or admissions in the nature of confessions, of actual guilt.

(3) In the former class of cases no predicate of voluntariness need be laid in order to render the admissions admissible in evidence.—*McGehee v. State,* 171 Ala. 19, 21, 55 South. 159. Defendant's several conversations with state's witnesses, which were introduced against him, were in no sense confessions of guilt; and, being prima- facie voluntary, they were admissible without the predicate. It is therefore not necessary to consider the sufficiency vel non of the predicates offered.

(4, 5) The chief question presented by the record is whether the testimony of the state's witness, Jim Thomas, who was confessedly an accomplice, and who testified directly to defendant's commission of the murder, was corroborated by any other evidence "tending to connect the defendant .with the commission of the offense," as required for his conviction by section 7897 of the Code. On the theory that there was no such corroboration, defendant requested the general affirmative charge, which was refused by the trial judge. A critical examination of the evidence convinces us that this charge was properly refused. (1) The witness Jack Walker testified that shortly before the killing he saw deceased going down the railroad track, and defendant and Jim Thomas walking along behind him; that the two latter talked for a few minutes; and that defendant then went on and joined deceased, and Thomas came on back and went on to the big road with a gun. (2) The scene of the killing was not a public and frequented place, and defendant was present, as all the evidence shows, and had the opportunity to kill. (3) Defendant made contradictory statements as to his ability to identify the man he claimed he saw shoot the deceased in his immediate pres-

[Holmes v. The State.]

ence. From this testimony and these circumstances, which clearly differentiate this case from the cases of Lindsey v. State, 170 Ala. 80, 54 South. 516, and Thompkins v. State, 7 Ala. App. 140, 61 South. 479, cited and relied on by appellant, the jury may well have implicated defendant in the killing, independently of Jim Thomas's testimony. On this subject, the trial judge said to the jury: "It is insisted by the defendant that the evidence of the accomplice, Jim Thomas, has not been corroborated. I have carefully considered this question, and I have decided that there is sufficient corroborative evidence of the accomplice, at least for me to submit the question to you. However, the question as to whether this evidence has been sufficiently corroborated to warrant a conviction of this defendant is one entirely within your province, and one for you to determine."

This was a proper and correct statement, and of it defendant cannot complain.

We find no error in the record, and the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.