19 So.2d 450

## BURNS v. STATE.

6 Div. 186.

Supreme Court of Alabama.

June 15, 1944.

Rehearing Denied Nov. 2, 1944.

Horace C. Alford, of Birmingham, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris and Geo. C. Hawkins, Asst. Attys. Gen., for the State.

STAKELY, Justice.

Appellant was tried and convicted of murder in the first degree. He received the death sentence. It is claimed by the State that Jake Prescott was murdered on the night of January 16, 1943. Three or four weeks later his body was found floating in Short Creek in Jefferson Coun-

ty. He had wounds on his head and his throat had been cut. His abdomen was slit open and in the opening was a hatchet and sledge hammer, held in place by cloth tied around the abdomen.

On this appeal, a reversal is sought on grounds which may be classified as (I) an attack on the procedure whereby the jury was impaneled and selected; (II) an attack on the sufficiency of the evidence on which the conviction was obtained; and (III) an attack on various rulings relating to the trial and its conduct, such as the rulings of the court on evidence, charges, and on other matters arising in the course of the trial.

I. It is urged that the court was in error in overruling the motion to quash the venire. The motion is based upon a number of grounds. It appears that the venire was drawn on June 26, 1943, for use in the circuit court during the week of July 19, 1943, the time of the trial. It is argued that the end of the term is the last Saturday in June and since the new term does not begin until the first Monday after July 4th, the action of the court in drawing the venire on June 26th is void. The theory is that since § 196 et seq., Title 62, Code of 1940, which apply to Jefferson County, do not prescribe the time for drawing the venire in a capital case, resort must be made to the general law as set forth in § 63, Title 30, Code of 1940, to determine the proper time for drawing the venire. This section reads in part as follows: "§ 63. Order for special venire; drawing and summoning special venire.—Whenever any person or persons stand indicted for a capital felony, the court must, on the first day of the session or as soon as practicable thereafter, make an order commanding the sheriff to summon not less than fifty nor more than one hundred persons, including those drawn on the regular juries for the week set for the trial of the case, and shall then in open court draw from the jury box the number of names required, * * *."

There is no merit in the contention. Terms of court have been abolished in this state. § 114, Title 13, Code of 1940. § 63, Title 30, referred to supra, has no application in Jefferson County, because a special procedure has been provided for Jefferson County.

"No special venire shall be ordered or drawn for the trial or trials of a defendant or defendants in capital felonies, and a defendant or defendants in capital felony cases shall only be entitled to strike from a list of twenty-four competent jurors obtained from the regular juries in the court." § 226, Title 62, Code of 1940.

The jury was properly drawn. § 30, Title 30, Code of 1940. See also § 45, Title 30, Code of 1940.

Besides, § 46, Title 30, Code of 1940, provides as follows: "No objection can be taken to any venire of jurors except for fraud in drawing or summoning the jurors." The very purpose of the foregoing section is to prevent the quashing of venires for mere irregularities, assuming for the sake of argument that there was an irregularity in the present instance. Wimbush v. State, 237 Ala. 153, 186 So. 145. No fraud is alleged, as required by the statute, which puts the matter beyond controversy. Zininam v. State, 186 Ala. 9, 65 So. 56; Richardson v. State, 191 Ala. 21, 68 So. 57; Garner v. State, 206 Ala. 56, 89 So. 69; Wimbush v. State, supra.

An examination of the record clearly shows that the procedure followed in summoning and impaneling the jury is the procedure provided solely for Jefferson County in § 196 et seq., Title 62, Code of 1940. It is insisted that these sections are unconstitutional and void, and that this being so, the appellant was entitled to have the jury summoned and impaneled in accordance with the general law of the state as set forth in § 63 et seq., Title 30, Code of 1940. It is pointed out that the general law gives the defendant certain rights which the local law does not, as for example, the right to have a special venire drawn from the jury box from which the defendant may strike the jury, the right to strike two jurors to the State's one juror, and the right to have a copy of the special venire served upon him at least one day before the day of trial. We shall proceed to an examination of the questions involved, because if the local jury law of Jefferson County is unconstitutional and void, then the motion to quash the venire should have been granted and it would be no answer for the State to rely on § 46, Title 30, Code of 1940, and say that no fraud was alleged in drawing or summoning the jury.

It is insisted that § 196 et seq., Title 62, Code of 1940, constitute local law, since these sections are expressly made applicable solely to Jefferson County. These sections are a codification of acts which were general laws with local application (Acts 1931, p. 455; Acts 1931, p. 255; Acts 1932, Ex.Sess., p. 89; Acts 1935, p. 1010; Acts

1936, Ex.Sess., p. 6). This is a correct insistence. It is further earnestly insisted that since this is local law, it is unconstitutional and void because in its adoption in the Code of 1940 by the legislature, the requirements of § 106 of the State Constitution as to notice and publication were not complied with. This position is incorrect and not in keeping with our decisions.

"In answer to your first inquiry, we agree with you that the Act passed over the Governor's veto May 26, 1931, to which you refer in that inquiry is a local act under section 110, Constitution, since it is a designation of Mobile in substance as the only city to which it may ever apply, and is therefore subject to section 106, Constitution, if it is not included in section 104(18). Whether it violates section 104(18) is not now considered. Mobile County v. State ex rel. Cammack, 240 Ala. 37, 197 So. 6.

"The provisions of this Act to the extent that they appear in the Code of 1940, Title 62, section 461, are made effectual by the adoption of the Code as of May 31, 1941. * * *" State v. Baumhauer, 244 Ala. 1, 12 So.2d 326, 329.

In response to the question as to whether § 106 of the Constitution should be followed in amending the statutes which constitute Title 62 of the Code of 1940, the Justices of this court gave the opinion that in order to make such amendment it is necessary to comply with § 106 of the State Constitution because these statutes constitute local law.

But in order that there might be no misconstruction of this opinion, the Justices further said: "This court has held that several of the constitutional requirements touching the enactment of a law do not obtain as to the codification of public statutes under the Constitution, Art. 4, § 85. Gibson v. State, 214 Ala. 38, 43, 106 So. 231; Ex parte Thomas, 113 Ala. 1, 21 So. 369. That is, the incorporation of acts into the code and the adoption thereof by the legislature cures all defects in the same that may have intervened in original enactment. Bluthenthal & Bickert v. Trager & Co. et al., 131 Ala. 639, 31 So. 622; State ex rel. Sossaman v. Stone, 235 Ala. 233, 178 So. 18; State v. Stone, 236 Ala. 82, 181 So. 281; Dillon v. Hamilton, 230 Ala. 310, 313, 160 So. 708; State ex rel. Hyland v. Baumhauer, Ala.App., 12 So.2d 340;[1] Brandon v. State, 233 Ala. 1, 4, 173 So.

238." In re Opinion of the Justices, 244 Ala. 384, 13 So.2d 762, 764.

In view of the earnest insistence of counsel, it is fair to consider the reasoning which supports the foregoing statement by the Justices, which cites the decision quoted supra. Title 62, and especially sub. 5 of Title 62 (§ 196 et seq.), is but a part of the Code of 1940. The Code of 1940 was adopted in its entirety by the Act of the Legislature approved July 2, 1940. Of course, if the Act of July 2, 1940, was a local act, compliance with § 106 of the Constitution was necessary. In determining whether the act is local or general so far as it relates to § 106 of the Constitution, the act must be considered as a whole and not in part. It will not be considered as part local, requiring notice, and the balance as general, requiring no notice.

"* * * Of course, if the act of 1921 is local, the requirements of section 106, Constitution, must have been complied with.

"The question in that respect relates to the act as a whole, and not to a part. It is either a local act, or a general act. It cannot be divided so that a part will be local and a part general requiring notice as to a part, and none as to the balance. * * *" Dillon v. Hamilton, 230 Ala. 310, 312, 313, 160 So. 708, 710.

We think it is plain that when the act was passed by the Legislature, adopting the Code of 1940 in its entirety, a general law was enacted. The Code of 1940 contains sixty-two Titles, each Title being comprised of many sections. Only one Title, which is Title 62, contains local law, and that law, as originally enacted, was general law with local application (Publishers' Forward, Vol. 1, Code of 1940).

But it is argued that this construction will allow the Legislature to avoid the requirements of § 106 of the Constitution by enacting laws of which those who are interested will have no notice, by the device of adopting a Code. This idea overlooks the nature of a Code and in the present situation, fails to consider that these statutes pertaining to the jury system of Jefferson County, as pointed out above, were valid as originally passed, being general acts with local application. In actual result, they affected only Jefferson County. These acts as originally enacted, with few changes, are the same as the sections in the Code

---

[1] 31 Ala.App. 35.

of 1940. From a practical standpoint, there was no break in the continuity of the law. It is true that the purpose of § 106 of the Constitution is the prevention of deception of those immediately affected by the local legislation to the end that they may have an opportunity to protest against the proposed enactment. Gray v. Johnson, 235 Ala. 405, 179 So. 221, 223. And this court has said that "while the requirements of sections 45 and 106 of the Constitution are not identical, yet their objects are, and their similarity suggests the same general line of reasoning in construing them." Gray v. Johnson, supra.

This court in Ex parte Thomas, 113 Ala. 1, 21 So. 369, construed what was then part of § 2, Article 4 of the Constitution of 1875, as follows: "No law shall be revised, amended, or the provisions thereof extended or conferred, by reference to its title only." The court in that decision pointed out that "the mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from the difficulty of making the necessary examination and comparison, failed to become apprised of the changes made in the laws."

It is obvious that the object of the clause quoted from the Constitution of 1875 is similar to the object sought to be attained by § 106 of the Constitution of 1901, and it may be said of these two constitutional provisions that "their similarity suggests the same general line of reasoning in construing them." In that case the Supreme Court of Alabama, speaking through Mr. Chief Justice Brickell, said: "The great body of the Code, civil and criminal, though there may be the occasional introduction of new legislation, consists of pre-existing statutes. There may be in some of them slight changes of verbiage or phraseology, not necessitating a change of the construction they had received, or of the construction they would, in accordance with the general canons of construction, receive. There was not an instant of time, from the day of their original enactment until the Code became operative, that they had not force and effect. Their vitality was never suspended or lost. When the Code became operative, these statutes were not in any proper sense revived, for the continuity of their existence had never been interrupted or broken. The Code approximates very nearly to the definition of the title it bears, and which since the adoption of the Code of 1852, has been the title applied in the digesting and revision of the statutes of the state: 'A body of laws established by the authority of the state, and designed to regulate completely, so far as a statute may, the subjects to which it relates.' Hendon v. White, 52 Ala. 597. If there be contrariety, or repugnancy, or inconsistency, in any of its parts, as may exist in any body or system of laws, or as not infrequently exists in statutes enacted at different periods, the courts are under the duty of interpreting and construing them; rendering them harmonious and consistent if possible, or, if that be not possible, declaring which shall prevail. But there is no room or reason for drawing them within the influence of the constitutional inhibition." Ex parte Thomas, 113 Ala. 1, 5, 21 So. 369, 370.

If there was no reason for drawing the clause, quoted supra from the Constitution of 1875, within the influence of the constitutional inhibition which has been referred to, it equally follows that there is no room for the application of § 106 of the Constitution where the adoption of the Code of 1940 is involved.

■ It is further insisted, however, that § 85 of the State Constitution contemplates a Code made up solely of statutes which constitute general law. § 85 is as follows: "It shall be the duty of the legislature, at its first session after the ratification of this Constitution, and within every subsequent period of twelve years, to make provision by law for revising, digesting, and promulgating the public statutes of this state, of a general nature, both civil and criminal."

There is no prohibition, however, in the foregoing section which prevents the inclusion of local laws in the Code. "But if it were a local law there is nothing in the Constitution to prevent the Code from containing a provision of local application." Dillon v. Hamilton, 230 Ala. 310, 314, 160 So. 708, 711. Laws are codified not only "to make them as certain as practicable, but also to enable every citizen readily to find where they are and what they declare, by publishing them in a systematic, condensed, but clear and comprehensive form." 59 C.J. p. 887. Though to a lesser degree than general law, the same reasons for codification may apply to local laws, and especially laws, which up to the time of the adoption of the Code, were general laws with local application. There is no good reason why the citizen in order to know

the law, should be forced to go through the many volumes which contain general laws with local application passed by the different legislatures.

To sum up the situation, it was not improper to embrace a codification of general laws with local application in a Code which obviously was primarily devoted to codification of general law without local application. And since the act adopting the Code of 1940 in its entirety is a general law, § 106 of the Constitution has no application. See Jenkins v. State, 245 Ala. 159, 16 So.2d 314; Brandon v. State, 233 Ala. 1, 173 So. 238.

It is further seriously contended that to uphold the statutes providing for the jury procedure in capital cases in Jefferson County is to deny the appellant that fair and impartial procedure which is a substantial element of due process of law as guaranteed by the 14th Amendment to the Federal Constitution. The differences between the rights of a defendant in a capital case in Jefferson County and in other counties of the state are well stated in the case of Stewart v. State of Alabama, 245 Ala. 511, 17 So.2d 871, although in that case no constitutional question was involved.

"We need not inquire into the question of whether such a motion properly presents defendant's contention in the light of our case of Irwin v. State, 220 Ala. 160, 124 So. 410, for we do not think the defendant had a right to be present and be heard in respect to the excuses of jurors presented to the judge organizing the jury for that week in view of the law which has application to Jefferson County in the trial of such cases; nor that the principle of Stinson v. State, 223 Ala. 327, 135 So. 571, and Smallwood v. State, 235 Ala. 425, 179 So. 217, is here controlling.

"Under the statutes which provide for a special venire in capital cases to include those 'drawn on the regular juries (of) the week,' we held in those cases that the court could not prior to the date of trial excuse any of them who had been thus drawn for service that week. Section 8644, Code of 1923. In that respect section 63, Title 30, Code of 1940 is not materially different. But by section 7 of the Act of September 13, 1935 (page 1010), section 226, Title 62, Code of 1940, no special venire is required in Jefferson County for the trial of capital felonies, but the venire shall be twenty-four competent jurors obtained from the regular juries in the court. The effect and constitutionality of that Act has been sustained. Dixon v. State, 27 Ala.App. 64, 167 So. 340, certiorari denied 232 Ala. 150, 167 So. 349.

"Under that set up, the defendant in a capital case in Jefferson County must be content with twenty-four competent jurors regularly organized for jury service that week, and has no right to have included others who were drawn for jury service but excused by the judge by authority of law. Under sections 4 and 5, Title 30, Code of 1940, the court in organizing a jury for the week has a discretion to excuse veniremen from such service." Stewart v. State of Alabama, 245 Ala. 511, 17 So.2d 871.

Before dealing directly with the question of infringement of the 14th Amendment, we think it well to refer to an Alabama authority, which by analogous reasoning, is applicable here. We refer to the case of State ex rel. Brandon et al. v. Prince et al., 199 Ala. 444, 74 So. 939. The decision in that case involved the constitutionality of a local act which abolished the office of jury commissioner for Tuscaloosa County and imposed the duties and conferred the powers thereof upon a board of revenue created by the act. It was contended that the local act infringed § 105 of the State Constitution, which provides that no local act shall be enacted where the subject is covered by general law. In upholding the local act, this court, speaking through Mr. Justice Mayfield, said:

" * * * the fact that there was a general law by which the juries for that county could be drawn by other boards or officers did not prevent the Legislature from providing, by a local enactment, that the juries shall be drawn by other boards, officers, or persons than those provided for in the general law. There is no constitutional provision requiring that the laws as to drawing and selecting juries shall be uniform in all the counties or in all of the courts of the state. * * *

"It is a part of the judicial history of this state before and since the adoption of the Constitution of 1901 that the methods and agencies for the selecting and drawing of jurors, etc., have been provided for by both local and general statutes. As before stated, there being no constitutional provision requiring the laws on this subject to be uniform in all the counties or all the courts, the Legislature may provide different laws for different counties; * * *." State ex rel. Brandon et al. v. Prince et al., 199 Ala. 444, 447, 74 So. 939, 941.

142

This court in the case of Morris v. State, 234 Ala. 520, 175 So. 283, had before it for consideration the act of the Legislature— Acts 1935, p. 1010—which is one of the general acts with local application, as shown above, which was codified in sub. 5, Title 62, Code of 1940, and which was designed to provide for and regulate the mode of selection and impaneling juries in counties having a population of 300,000 or more, according to the last or any future federal census. In this Act, for example, it was provided that no special venire shall be ordered or drawn for trial of a defendant in a capital case and the defendant shall only be entitled to strike from a list of twenty-four competent jurors. In that case, in construing the Act in the light of the 14th Amendment to the Constitution of the United States, this court said: "The jury was drawn and impaneled in strict compliance with General Acts 1935, p. 1010 [Code 1940, Tit. 62, §§ 221–227], but the defendant contended that said act violated the Federal Constitution, in that it is repugnant to the Fourteenth Amendment to the Constitution of the United States, as denying to appellant the equal protection of the law and depriving him of life and liberty without due process of law. This contention is without merit, and was so decided in the case of Dixon v. State, 232 Ala. 150, 167 So. 349, wherein this court not only denied certiorari but expressly approved the opinion of the Court of Appeals in said Dixon Case [27 Ala.App. 64], 167 So. 340." Morris v. State, 234 Ala. 520, 175 So. 283, 284.

The appeal in the case of Morris v. State was dismissed by the Supreme Court of the United States for the want of a substantial federal question. Morris v. State of Alabama, 302 U.S. 642, 58 S.Ct. 58, 82 L.Ed. 499, rehearing denied 302 U.S. 778, 58 S.Ct. 263, 82 L.Ed. 602.

The Morris case, however, is not a precise authority here, because the law now under consideration provides a procedure exclusively for Jefferson County, regardless of whether there is another county with a population of 300,000 or more, according to the last or any future federal census.

The test which governs in the case at bar is not whether the procedure in Jefferson County is different from the procedure in other counties, but the test is whether each person in Jefferson County enjoys the same protection of the law, accorded by law to all other persons in Jefferson County. This principle was established by the Supreme Court of the United States in the case of Gardner v. State of Michigan, 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212, where the Court said: "This difference between the general law relating to jury trials and the special law relating to Wayne county, it is said, constitutes a discrimination against the people of that county, and amounts to a denial to them of the equal protection of the law. This view does not command itself to our judgment. It is fully met and shown not to be sound by the judgment in Missouri v. Lewis (Bowman v. Lewis), 101 U.S. 22, 31, 25 L.Ed. 989, 992, where Mr. Justice Bradley, speaking for the court, and referring to the 14th Amendment, said: 'The last restriction, as to the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances to resort to them for redress. Each state has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. As respects the administration of justice, it may establish one system of courts for cities and another for rural districts, one system for one portion of its territory, and another system for another portion. Convenience, if not necessity often requires this to be done, and it would seriously interfere with the power of a state to regulate its internal affairs to deny to it this right. We think it is not denied or taken away by anything in the Constitution of the United States, including the amendments thereto. We might go still further and say, with undoubted truth, that there is nothing in the Constitution to prevent any state from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the state of New York, for example, should see fit to adopt the civil law and its method of procedure for New York city and the surrounding counties, and the common law and its method of procedure for the rest of the state, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the 14th Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the state should be accorded the equal protection of the laws prevailing there, he could not justly

complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.'" Gardner v. State of Michigan, 199 U.S. 325, 26 S.Ct. 106, 109, 50 L.Ed. 212, 217. See also Vernon v. State, 245 Ala. 633, 18 So.2d 388; 16 C.J.S., Constitutional Law, p. 1135, § 563.

▮ We conclude that the statutes providing for the jury system of Jefferson County in capital cases do not infringe upon the 14th Amendment to the Constitution of the United States.

There was no error in overruling the motion to quash the venire.

II. At the close of the State's case, the defendant moved to exclude the evidence. The court overruled the motion. The court also refused the affirmative charge requested by the defendant. These rulings are assigned as error on the theory that there was not sufficient corroborating evidence, as required by § 307, Title 15, Code of 1940, which is as follows: "A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

The State's case was based on the testimony of Charlie Odiorne, an ex-convict, who, by his own testimony, was an admitted accomplice of the defendant, and who was also indicted for the murder of Jake Prescott. It therefore is necessary to examine the testimony of Charlie Odiorne and the testimony offered in corroboration thereof to see if the requirements of the statute have been met.

It is not practicable to set out the testimony in all its detail. But in substance, the testimony of Charlie Odiorne showed that he went with the defendant on the night of January 16, 1943, to the home of Jake Prescott, which is on the road that turns off to the left from the road from Maxine to Bluff Creek in Jefferson County. There Jake Prescott was lured outside his house, partly dressed, and carried in the defendant's car to a place in the woods, where he was killed by the defendant with blows on the head with a hatchet and by cutting his throat; that the body was carried in the back of the defendant's car to Short Creek, where witness handed the defendant the hatchet with which deceased had been killed and a sledge hammer; that after the hatchet and hammer had been stuck in the abdomen of the deceased in an opening in the abdomen made with a knife, and the abdomen wrapped with the cloth that formed one leg of the overalls which the deceased was wearing, the defendant pushed the body out into the creek with a stick; that witness had been driven to the scene of the crime by the defendant in the defendant's 1930 Franklin car; that on the way they had stopped at a filling station at Avenue F and about 7th or 8th Street, next to the Standard Oil plant, and got some gas and defendant was cursing because he was having trouble in getting off the cap which locked the gas tank, and became further exasperated when the negro attendant tried to put water into the car, which was air-cooled; that the day before they had worked on the car, installing a new settling bulb; and then they had gone to Sears-Roebuck where the defendant made a claim because the plug the defendant had bought from them had broken the settling bulb; that the car of the defendant had a rumble seat in the rear and the floor of the back of the car was out with the exception of two boards; that the next morning (Sunday) the defendant drove his car to where witness was staying and turned the car over to witness; that the night before defendant had told witness that he had to make way with the car; that witness drove the car around Sunday and on Monday morning defendant asked him if he had disposed of the car, saying that he (defendant) had reported it stolen, that the police had arrested Lola (wife of the defendant) and were looking for a heavy-set man who had been running around with defendant; that witness thereupon drove the car out in the neighborhood of Gate City and after driving it into a ditch in the woods, burned the car up; that he thereupon 'phoned the defendant and told him where to get off the bus in the neighborhood where the car was burned, so defendant could meet him; that thereupon defendant came out; that there was blood on the right-hand running board and on the axle housing below where the boards were out in the floor of the rumble seat; that he sold the burned car and received a check for $15, which he cashed at a filling station; that on the night of Saturday, January 16th, they passed two or three women on the road just before they

turned off to Jake Prescott's house; that on the night Jake Prescott was murdered, defendant told witness that there was a man from New York and the deal for Lola's timber had to be closed over the week-end; that the previous Saturday witness had been out to Jake Prescott's house with defendant, as defendant wanted Prescott to sign papers for sale of Lola's timber; that according to defendant, Prescott was Lola's guardian and it was necessary for him to sign the papers.

Was the evidence sufficient to corroborate the testimony of Charlie Odiorne so as to make his testimony admissible? The rules which govern in this regard have been stated by this court as follows:

"Whether or not there was evidence corroborating the accomplice witness, tending to connect the defendant with the commission of the offense, is a question of law; its weight and sufficiency, along with the testimony of the accomplice to show the defendant's guilt beyond a reasonable doubt, were questions for the jury. Code 1923, § 5635 [Code 1940, Tit. 15, § 307]; Read v. State, 195 Ala. 671, 71 So. 96; Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712; Lindsey v. State, 170 Ala. 80, 54 So. 516.

"It is not necessary that the corroborating evidence refer to any particular statement or fact testified to by the accomplice. If it strengthens the probative criminating force of his testimony and tends to connect the defendant with the commission of the offense, it is sufficient to warrant the submission of the issue of guilt or innocence to the jury. Malachi v. State, 89 Ala. 134, 8 So. 104; Ross v. State, 74 Ala. 532; Palmer v. State, 165 Ala. 129, 51 So. 358; McDaniels v. State, 162 Ala. 25, 50 So. 324." Smith v. State, 230 Ala. 413, 416, 161 So. 538, 542.

### Motive

"A most common circumstance is deceased's possession of money or property, as leading to the accused's desire to kill." Wigmore on Evidence (3d Ed.), p. 337. There was evidence tending to show that defendant wrote letters, which tended to indicate that he expected to benefit financially from the death of the deceased. Lottie Burrell swore she saw defendant at Prescott's home twenty times or more and one time saw him with papers in his hands referring to some timber, which he tried to get Prescott to sign. Mrs. Betty Burrell testified that she saw the defendant talking to Prescott about the timber and he had papers in his hand, which he asked Prescott to sign. Lola Burns testified defendant had made several trips to see Prescott and had endeavored to get Prescott to let him sell the timber, that the defendant wanted to handle the timber.

### Effort to Suppress Testimony

The State introduced in evidence a letter which Lola Burns testified was in the handwriting of the defendant and which she received when she went to Chattanooga, in effect telling her that she knew nothing, had not been out of his house for one week and to say nothing. The State also introduced a writing which the witness Thomas Pinson swore defendant tried to pass from his cell in jail to Charlie Odiorne in his cell in jail, the writing in effect saying that losing his head was the trouble, and not to talk. The paper was not signed, but this evidence, under the circumstances, was competent and admissible.

### Effort to Fabricate Testimony

The State introduced a letter written by the defendant suggesting that for publicity purposes, a statement be procured from Lola Burns, showing in effect that defendant was at home on Saturday night, January 16th, and was drunk.

### Opportunity to Commit Crime

There was evidence tending to show that Odiorne and the defendant were seen in the car of Burns on a Saturday night about the middle of January about 6 or 7 p. m. at the filling station on Avenue F at 8th Street in the City of Birmingham. C. J. Strozier, employed at the filling station, testified that two men were in the car, whom he identified as the defendant and Charlie Odiorne; that his attention was called to the matter because defendant was rough talking because the negro helper had attempted to put water into the radiator of the car, which was a Franklin and air-cooled, and the cap on the gas tank was hard to get off and defendant removed it. The negro attendant, Giles Cox, swore to the same effect.

Montez Turner testified without objection that she saw a car pass about 9:30 or 10 on the Saturday night before Prescott disappeared, going toward the Prescott house; that she recognized the car by its sound and shape; that she had seen the car a good many times before; that the car had a loud noise that was different from other cars she had heard on the

road in front of her house. Lottie Burrell testified that she had ridden in the car of defendant and knew its sound; that she heard the sound of this particular car the Saturday night before Prescott disappeared; that it had a roar like an airplane and was different from the sound of any other car she had ever heard. Mrs. Betty Burrell, Mrs. Mamie Harbin and Jean Gober all testified to like effect. All of these witnesses testified that they were familiar with and knew the car. Some of this testimony was based on recognition of the car by sound alone. This testimony was competent.

"It has been properly held, for example, that a witness may testify to a person's identity from voice alone." Wigmore (3d Ed.), Section 660.

The author cites in Note 1 to this section many English and American cases so holding. Our own court has so held in Orr v. State, 225 Ala. 642, 144 So. 867. In this case it was held that it was proper to permit the witness to state that, in her best judgment, the defendant's voice was the same voice she heard talking in her house on the night of October 20th (the night the rape was committed).

"So, too, chattels may be identified by their appearance and other qualities." Wigmore (3d Ed.), Section 660.

The author cites in Note 6 many authorities. One of the cases is State v. Rainsbarger, 74 Iowa 196, 37 N.W. 153, in which a witness was permitted to identify a buggy by its rattle. Another case cited is Commonwealth v. Best, 180 Mass. 492, 62 N.E. 748, in which the identification of a wagon by its rattle was allowed.

And in Lancaster v. State, 21 Ala.App. 140, 106 So. 609, 615 (cert. den. 214 Ala. 2, 106 So. 617 and 214 Ala. 76, 106 So. 618) our Court of Appeals held that no error was committed in permitting the witness Avery, shown to have been an expert automobile mechanic and familiar with automobiles, to testify to the identity of a certain Buick car by the sound of its exhaust. The witness testified he knew this particular Buick car, knew the peculiarity of the exhaust from its engine, and then gave it as his best judgment that the car passing a certain point on the road was this car. Said the court: "Judgment as to identity may be formed through and by any of the senses of seeing, hearing, feeling, smelling, or tasting, if the test is such as to impress the mind as to the identity of the thing testified about."

### Preparation

The testimony of the witness, Jacob Krantz, tended to show that the defendant bought the hatchet, which was later found in Prescott's body, from the witness Krantz during the week before Christmas week. There was evidence tending to show identification of the hatchet by the witness by a corner broken off the blade of it and the cost mark. The witness swore he had known defendant since 1923 or 1924.

### Use of Defendant's Hatchet and Car in Perpetration of the Crime

There was evidence tending to show that defendant's hatchet was used in the perpetration of the crime. Also, as shown above, there was testimony by five witnesses tending to place defendant's car at the scene of the crime. There was also evidence tending to show that blood was later found on the rear axle housing of the car.

### Destruction of Defendant's Automobile

There was evidence tending to show defendant's presence at Gate City, as shown by the bus driver, on the Monday night after Prescott disappeared. There was evidence tending to show that defendant reported to the police that his car was stolen on Thursday or Friday before the murder was committed on Saturday night. And there was evidence tending to show that this claim was false.

The corroborating evidence speaks for itself. Testimony tending to show motive was competent when taken in connection with the other evidence. Slayton v. State, 234 Ala. 1, 173 So. 642. There was no error in overruling the motion to exclude the testimony of Charlie Odiorne and in refusing the affirmative charge requested by the defendant. Ross v. State, 74 Ala. 532; Malachi v. State, 89 Ala. 134, 141, 8 So. 104, 106; Read v. State, 195 Ala. 671, 71 So. 96; English v. State, 14 Ala.App. 636, 72 So. 292; Hargett v. State, 18 Ala.App. 616, 93 So. 207; Cheatwood v. State, 22 Ala.App. 165, 113 So. 482; Tidwell v. State, 23 Ala.App. 409, 126 So. 186; Newsum v. State, 10 Ala.App. 124, 65 So. 87; Gilbert v. State, 18 Ala.App. 393, 92 So. 522; Smith v. State, 230 Ala. 413, 161 So. 538; Berry v. State, 231 Ala. 437, 165 So. 97; Skumro v. State, 234 Ala. 4, 170 So. 776; Bailey v. State,

30 Ala.App. 374, 8 So.2d 202, cert. den. 242 Ala. 673, 8 So.2d 207.

III. After the motion to quash the venire was overruled, defendant's counsel filed a petition or motion setting out that defendant was insane at that time and asking the court to make an order for the removal of defendant to Bryce Hospital for observation and examination. Defendant's counsel states in the petition that it is filed under Title 15, § 428, Code of 1940. Whether the motion was filed under § 425, § 426 or § 428, there was no error in overruling it.

■ The refusal of the trial court to suspend the trial and submit to a jury an inquisition as to defendant's insanity at the time of the trial under the provisions of § 426 is a matter of discretion and is not reviewable on appeal in the absence of abuse of discretion. Granberry v. State, 184 Ala. 5, 63 So. 975; Rohn v. State, 186 Ala. 5, 65 So. 42; Whitfield v. State, 236 Ala. 312, 182 So. 42.

§ 425 is not mandatory. Refusal to stay murder prosecution in order to appoint a commission or the superintendent of the state hospital for insane to examine accused and report his mental condition, is not error. § 425, Title 15, Code of 1940 (Gen.Acts 1933, Ex.Sess., p. 144) is not mandatory but leaves such matters to the discretion of the court. Oliver v. State, 232 Ala. 5, 166 So. 615; Gast v. State, 232 Ala. 307, 167 So. 554.

■ The following conversation took place between the court and counsel for the defendant in the presence of the jury:

"The Court: Mr. Alford, call another witness, if you have got one, please, sir, and let us go ahead with this case.

"Mr. Alford: I have no other witness.

"The Court: Are you going to put the defendant on?

"Mr. Alford: No, sir; not yet, not until I have finished with all my testimony.

"The Court: I have got something to say about that. I am not going to sit here and waste time. Have you got any other witness available? If you have, let us go ahead.

"Mr. Alford: I have no other witness except Mrs. Morrison and the city jail records, is all I have, and then I will elect whether to put the defendant on the stand at that particular time, or not, as soon as I get through with them.

"The Court: You cannot tell? You tell me, as an officer of the court, that you don't know whether you—until you have examined those records down there, whether you want to put the defendant on?

"Mr. Alford: If Your Honor please, I would like not to have to discuss the matter of this type in the presence or hearing of the jury.

"The Court: Let the jury go out then. I want to proceed with the case. I don't want to unnecessarily delay it. I want to give you every chance in the world.

"Mr. Alford: I realize that."

The jury then retired.

No objection or exception was made to the remarks of the court which were obviously made for the purpose of expediting the trial. Furthermore, at defendant's request the following written charge was given by the court: "5. I charge you, Gentlemen of the Jury, that no inference or conclusion should be drawn by the jury from the fact that the defendant was not sworn and put on the stand as a witness in his own behalf, nor should this fact have any weight with the jury in reaching a verdict."

There was no error in this regard.

■ It is urged that the court was in error in overruling the motion for a new trial on the ground that the defendant was not present when some of the jurors were excused by the court. This ruling was not error. Stewart v. State, supra; Dixon v. State, 27 Ala.App. 64, 167 So. 340, cert. den. 232 Ala. 150, 167 So. 349; Green v. State, 233 Ala. 349, 171 So. 643; Dyer v. State, 241 Ala. 679, 4 So.2d 311.

■ Over the objections of counsel, the State was allowed, after the defendant had rested his case, to introduce evidence not in rebuttal. This is a matter of discretion with the trial court and is not reversible error. Pressley v. State, 166 Ala. 17, 20, 52 So. 337; Braham v. State, 143 Ala. 28, 38 So. 919.

We have not only discussed the questions raised by counsel, but have examined the record with great care, and finding no error, the judgment of the lower court is affirmed.

Affirmed.

All the Justices concur.