122 So.2d 382

Jack LOWE, Sr.

v.

STATE.

8 Div. 430.

Court of Appeals of Alabama.

Jan. 28, 1958.

Rehearing Denied April 8, 1958.

**10**

Pilcher & Floyd, and Roberts & Orme, Gadsden, for appellant.

John Patterson, Atty. Gen., and Wm. C. Younger, Asst. Atty. Gen., for the State.

CATES, Judge.

Jack Lowe, Sr., a Negro, was indicted February 17, 1956, in the Etowah Circuit Court for first degree murder in shooting Allen Walter Melson to death with a pistol. He was, on May 16, found guilty of voluntary manslaughter by a jury, and sentenced to ten years in the penitentiary. His appeal was submitted here February 14, 1957.

The evidence tended to show:

About 9:10 P.M. January 7, 1956, Mr. W. W. Morris, the coroner of Etowah County, received a call to investigate a shooting at Lowe's Drive In Cafe in East Gadsden. He found a Negro man, Melson, lying dead about two feet from the front door of the cafe. He had been shot twice. "One of the shots entered into his chest six inches below his collar bone. * * * And the other one about five inches below the armpit, on the right side."

Melson had come into Lowe's place of business some fifteen minutes before the shooting, and, after conversing with Lowe, was ordered out by the latter. Melson, standing in the threshold with his right hand in his overcoat pocket, argued with Lowe, saying he would leave—according to some accounts telling Lowe, "Jack, if you draw that gun on me like that again, I'll see you." According to another witness, Melson told Lowe, "Shoot me; if you are going to shoot, go ahead and shoot."

Lowe shot twice. Melson fell dead through the doorway onto the ground. No weapon was found on him by the police some fifteen minutes later.

Lowe's version is somewhat variant from the State's presentation of the killing. Two points of essential difference arise: *first,* Lowe pleaded and adduced testimony of self defense arising from his acting upon the appearance of his being in mortal danger; and, *second,* Lowe and his wife related a taunt made by Melson which went back to a remark allegedly made by Melson some few days earlier, viz.: " 'Hell no, * * * I don't want none of your god damn sandwiches. * * * I'll go home and eat with my damn white woman, like you better do Jack Lowe.' " When Lowe's wife stated that Melson said this in her hearing, Melson denied it—"You are a god damn liar."

In cross-examining Lowe, part of the interrogation went:

"Q. Now, as a matter of fact, Jack, don't you know that when he made the statement about a white woman, that he was referring to a girl by the name of Celie Maxwell that you have been going with?

"Mr. Pilcher: We object to that, if the Court please.

"The Court: What is the purpose of that?

"Mr. Wright: The purpose of that is to show motive, if the Court please.

"The Court: All right.

"Mr. Pilcher: We object to that.

"The Court: I overrule the objection.

*       *       *       *       *       *

"Q. Don't you know that's what he was talking about, Jack? A. I don't know, sir.

*       *       *       *       *       *

"Q. You know this girl by the name of Celie Maxwell?

"Mr. Pilcher: Now we object to that, if the Court please, irrelevant, and immaterial.

"Mr. Wright: If the Court please, I am testing his knowledge of that matter. He said he didn't know the girl.

"The Court: I overrule the objection.

"Mr. Pilcher: We reserve an exception to it.

"The Court: That has been brought out, throughout the course of this trial, that same reference to a white woman, by the defense. Go ahead.

"Mr. Pilcher: We except to the Court's ruling, and we except to the question.

"Q. You know a girl by that name, don't you? A. Yes, sir.

"Q. And she's practically white, isn't she, Jack?

"Mr. Pilcher: Now we object to that.

"The Court: I overrule it.

*       *       *       *       *       *

"The Court: Her skin, he means, Jack.

"A. She's light, yes, sir.

"Q. Yes. And you have been going with her, haven't you?

"Mr. Pilcher: We object to that.

"The Court: I overrule the objection.

"Mr. Pilcher: We reserve an exception to it.

"Q. Haven't you, Jack? A. Ask that again, sir.

"Q. I say and you had been going with her, hadn't you? A. No, sir.

"Q. You had never been with her? A. No, sir.

"Q. As a matter of fact, Jack, don't you know that Mr. Dismukes stopped you one time when you were in the car with her?

"Mr. Pilcher: Now we object to that. We object to it.

"The Court: Just a minute.

"Mr. Wright: I am impeaching him now.

"The Court: I overrule the objection.

"Mr. Pilcher: We reserve an exception to the Court's ruling.

"The Court: Go ahead.

"Don't you remember that, Jack? A. I don't recall it, sir.

\*    \*    \*    \*    \*    \*

"Q. All right. To refresh your recollection, Jack, I will ask you if the occasion which you were stopped, Celie Maxwell was in the car, and was just before Christmas, over here on the Meighan Boulevard, and Officer Dismukes and Officer Clements were the ones that stopped you?

"Mr. Pilcher: And we object to that question.

"The Court: I overrule the objection.

\*    \*    \*    \*    \*    \*

"A. I don't remember riding in the car with me and her alone."

To support the relevancy of the enquiry on cross, the State quotes from Burns v. State, 246 Ala. 135, 19 So.2d 450:

"\*    \*    \*    Testimony tending to show motive was competent when taken in connection with the other evidence. Slayton v. State, 234 Ala. 1, 173 So. 642. \*    \*    \*"

In rebuttal (and as stated by the solicitor, "for impeachment"), the State brought in Mr. John Dismukes who testified over objection, that on an occasion just before Christmas 1955 he had stopped Lowe and Celie Maxwell (who was brought into the courtroom and identified by Dismukes) on Meighan Boulevard in a pickup truck.

Without deciding whether or not it was proper to ask Lowe what the words attributed by him to Melson meant, we consider that, since there was .no evidence of Celie Maxwell being alluded to in Melson's imputed words, nor of her being the third party in a triangle involving Lowe and Melson, Dismukes's testimony as to her being in a vehicle with Lowe was irrelevant and inadmissible. Celie Maxwell neither fitting into the case by way of elaboration of the res gestae nor by way of motive, the only theory supportive of Dismukes's evidence was that of contradiction of Lowe as to his general credit.

■    Was Dismukes's testimony so connected with the homicide issue as to contradict a part of Lowe's testimony bearing on the homicide? We think not, Ortez v. Jewett, 23 Ala. 662; Lang v. State, 84 Ala. 1, 4 So. 193; Smith v. State, 261 Ala. 270, 73 So.2d 916.

The early cases often quote from 1 Greenleaf, Evidence, § 449:

"\*    \*    \* if a question which is collateral or irrelevant to the issue, is put to a witness *his answer cannot be contradicted by the party who asked the question, but it is conclusive against him.*" (Italics ours.) See Ortez v. Jewett, supra; Rosenbaum v. State, 33 Ala. 354; Blakey's Heirs v. Blakey's Ex'x, 33 Ala. 611; Crawford v. State, 112 Ala. 1, 21 So. 214.

The rebuttal testimony here was offered "to impeach"; it was on an immaterial question, and going to "general credit" was inadmissible. See Noble v. State, 253 Ala. 519, 45 So.2d 857; Haley v. State, 63 Ala. 83. See also People v. Perry, 277 N.Y. 460, 14 N.E.2d 793; Wigmore, Evidence (3rd Ed.), §§ 1003, 1020, 1021; Wharton, Crim.Evidence (12th Ed.), § 914; 98 C.J.S. Witnesses § 633. As to "general credit" and "particular credit," see Bemis v. Kyle, 5 Abb.Prac., N.S., 232.

The cross-examining party gets no nearer to the truth of the main issue by proving the witness is a liar on a side issue. At some point the journeying down by-paths must cease. The point of departure (except where the peregrination is to show bias, animus, corruption, or other reflection of the witness as credible peculiarly to the instant trial) is reached on the descent to an area having nothing to do with the case.

Since permissible inferences from Dismukes's testimony admit of the probability of prejudicing Lowe in the eyes of the jury, we cannot excuse its admission as error without injury under Supreme Court Rules, rule 45, Code 1940, Tit. 7 Appendix and the last sentence of Code 1940, Tit. 15, § 389. Hence, we are required to reverse the judgment below and remand this cause there for a new trial.

Reversed and remanded.

### On Rehearing

CATES, Judge.

The Attorney General contends that Mr. Dismukes did not answer the question to impeach Lowe.

The record shows:

"Q. Now Mr. Dismukes, you heard the defendant testify a little earlier. I will ask you whether or not, on an occasion just prior to Christmas of last year, you stopped this Defendant and a woman, on Meighan Boulevard, in an automobile?

"Mr. Pilcher: Now we object to that question. Irrelevant, incompetent and immaterial.

"Mr. Wright: Impeachment, if the Court please.

"The Court: I overrule the objection.

"Mr. Pilcher: Impeaching the Defendant witness on an immaterial and improper fact.

"The Court: I overrule the objection.

"Mr. Pilcher: And we reserve an exception.

"Q. Would you know that woman if you were to see her? A. It was a pick-up truck.

"Mr. Pilcher: We object to this. (At this point a woman was brought into the Courtroom by Mr. Burns, and said woman stood in front of the bench, the Jury and the witness box.)

"Q. Would you know that woman if you were to see her again? A. Yes, sir.

"Q. Do you see her in the Courtroom? A. Yes, sir.

"Q. Where is she? A. Right there (Pointing)."

We submit a fair reading of, "It was a pick-up truck," was an affirmative answer to *both* of the preceding questions with the qualification that Lowe and the woman were in a pick-up truck rather than a passenger car of the more customary type.

Application overruled.