# Harrison *v.* The State.

*Indictment for Murder.*

1. *Evidence; what admissible.*—There being evidence which tended to show a conspiracy, or agreement between the deceased and one A. on one side, and the defendant and one M. on the other, to bring on a difficulty with each other, a few days before the encounter in which the deceased was killed, the defendant and deceased being then strangers to each other, the statement of said A. as a witness, to the effect that, a day or two before the difficulty, he pointed out the defendant to the deceased, on the street, and told him he was the man with whom witness had the difficulty at the surprise party a few nights before, is competent and relevant evidence for the defendant.

2. *What witness may state.*—A witness can not be allowed to testify that one of the parties to a difficulty, in stopping the defendant a few nights before the difficulty, did so with the intention of provoking a difficulty.

3. *Evidence in rebuttal.*—The difficulty between the parties having occurred while they were attending church at night, and the State having proved that the defendant was heard to say to one M. that if he would call some one, not named, out of the church, he (defendant) would shoot him down, after which M. went back into the church, and requested the deceased to come out; it is competent for the defendant to prove, by a woman who was present, that she sent into the church for M., and asked him to come out and walk home with her.

4. *Argument of counsel; discretionary power of court to interrupt.* The court has a discretionary power to require all legal propositions to

[Harrison v. The State.]

be argued to the court, and not to the jury; and may properly interrupt counsel when reading from a text-book, and state that the principle announced is not correct.

5. *Retreating.in case of homicide; doctrine in Walker's American Law as to, not approved.*—Our law does not regard as "a cowardly doctrine,' the rule which requires a party to retreat, under certain circumstances, in order to avoid unnecessary bloodshed; and when counsel read to the jury an extract from Walker's American Law (p. 492), in which that assertion is made, the court may interrupt him, and state the correct principle of law.

6. *Self-defense; charge asserting correct doctrine as to.*—A charge in these words, "The doctrine of self-defense is not available, when the defendant was himself the aggressor, or was not reasonably free from fault in bringing on the difficulty; nor can it be invoked, unless the defendant was, or appeared to be, so menaced at the time, by some overt act on the part of his assailant, as to create in his mind a reasonable apprehension of danger to his life, or the infliction upon him of grievous bodily harm, and that there was no other reasonable mode of escape from such impending peril," asserts a correct proposition.

7. *Statement by defendant.*—In making his statement to the jury, as authorized by the statute (Acts 1882-3, pp. 3-4), the defendant may state the fact that he had had a previous difficulty with one of the parties engaged in the fatal rencounter, and the general nature of that difficulty as trivial or grave; but he can not state the details or particulars of it, and he may be interrupted by the court when attempting to state them.

APPEAL from Mobile City Court.

Tried before the Hon. O. J. SEMMES.

The appellant, Noah Harrison, was convicted of murder in the second degree, and sentenced to the penitentiary. On the trial, the State introduced a witness, one Amelia James, who testified that, two or three nights before the affray at Bethel church, in which the deceased was killed, she heard a conversation between the defendant and one McCall, in which defendant said to McCall, "If you will call him out, I will crack down on him." One Allen, a witness for the State, testified that he (Allen) had a difficulty with defendant at a surprise party a few nights before the killing; that after the party he, his brother and several others met Harrison on the street, accompanied by one Melissa Stewart; that Allen's brother asked Harrison about the fuss he had at the party, and said to him, "You wanted to fight my brother, why don't you fight some one your size?" This witness further testified, that defendant was a stranger in Mobile, and did not know the deceased (Abe Anthony), and had never had any difficulty with him; that a day or two before the difficulty at Bethel church, in which Anthony was killed, he had seen Harrison on the street, and pointed him out to Anthony, and told him that he was the man with whom he had the difficulty at the surprise party. The State objected to the testimony of this witness, as to his pointing out the defendant to Anthony as the man with whom he had the difficulty at the surprise party; the court sustained the

[Harrison v. The State.]

objection, and refused to permit the testimony to go to the jury; and defendant excepted.

Allen further testified, that on the night of the difficulty in which Anthony was killed, he accompanied Anthony to church, and sat with him while there; that they saw defendant and McCall there together; that Anthony, noticing defendant, turned to witness, and asked him if that was the fellow who had drawn a pistol on him; that he replied, that it was; and that Anthony then asked him, why he did not go and ask him what he meant by it; that just before the shooting McCall got up and left the church, and that witness and Anthony followed him; that as soon as they got on the outside of the church, the defendant came out also; that as they came out of the church on the gallery, McCall turned round, and said to witness and Anthony, "What do you fellows want?" and that the defendant immediately said, "You fellows, come down on the side-walk;" that without any thing else being said, they went down on the side-walk, and then, without any provocation, defendant shot Anthony with a pistol. The State then introduced one Scott as a witness, who testified, that just before the shooting, Allen, McCall and defendant got up and left the church, and that shortly afterwards Allen came back, and tried to induce Anthony to go out with him, telling him that a woman wanted to see him on the gallery; that Anthony refusd to go, and Allen left him, but soon afterwards McCall came in, and asked Anthony to go outside with him; and upon Anthony's refusal to do so, he picked up his (Anthony's) hat, and walked out of church with it, and that Anthony followed him out.

One Charles Stewart, a witness for the State, testified, that just before the shooting, he heard some one on the steps of the church say "where is my hat?" and some one on the ground exclaimed, "Here she is, damn you, come and get her, do you think I am going to bring her to you;" that just as the pistol fired, he opened the door, and ran out of the house to the church, where he found Anthony dead.

The deposition of McCall was introduced by the defendant, and in it the witness testified, that he and defendant went to church together on the night Anthony was killed, and sat together while there; that he saw Allen, Anthony and three or four other men sitting on a seat together; that he told defendant that Allen, Anthony and the others seemed to be talking about and watching him; that just before the shooting, a man came to him while he was sitting in church, and told him that a woman named Melissa Stewart wished to see him outside on the gallery; that Harrison begged him not to go, but that finally both concluded to go and see what the woman wanted;

[Harrison v. The State.]

that they were followed from the church by Allen, Anthony, and the other men with them ; that as soon as Anthony came out, he said, " Where is the son of a b—h ?" and that Allen pointed out Harrison, and said there he is ; that defendant then ran down the steps, followed by Anthony, who was calling on him to stop ; and that at the time Anthony was shot, he was trying to cock his pistol, and saying, "I have got you now."

The defendant made a statement, in which the difficulty at the church is set out substantially as in the testimony of McCall ; and after telling when he came to Mobile, and that he was not acquainted with Anthony, he stated that two or three days before the killing, he had a difficulty at a surprise party with Allen, and was proceeding to give the details of that difficulty, when he was stopped by the court, who informed him that he could state the general nature of the difficulty, but that he could not state the particulars. To this interruption by the court, the defendant objected ; his objection was overruled, and he excepted.

Melissa Stewart testified that she was present at a surprise party, two or three nights before Anthony was killed, and came away with defendant ; and that while walking home, they were followed by Allen and a crowd of his friends, who stopped Harrison, " with the intention of provoking a difficulty with him." The State objected to this statement, on the ground that it was the mere opinion of a witness, and that the witness could not testify as to the intention of Allen. The court sustained the objection, and ruled out the testimony as to the intent of Allen ; and defendant excepted. This witness further testified, that on the night of the killing, and shortly before it took place, she sent a man into the church to ask McCall to come out and take her home, and that after she sent the man into the church with the message she concluded not to wait and went on home. The State objected to this testimony, as immaterial and irrelevant. The court sustained the objection, and excluded the testimony ; and defendant excepted.

The counsel for defendant, in his argument, read an extract from Walker's American Law, page 492, in which, after discussing the doctrine of self-defense, the following extract appears : " When by the nature of the attack, there is reasonable ground to believe that there is a design to destroy life, or to commit a felony upon the person, the killing of the assailant will be excusable homicide, although it should afterwards appear that no felony was intended ; and this is the good sense of the matter. The party assailed must judge from the circumstances of the moment, and act upon the hasty conclusions thus formed. The cowardly doctrine, therefore, of retreating

[Harrison v. The State.]

as far as possible, before resisting, would seem to have no more foundation in law than it has in the common feelings and practice of mankind ; and although it is clear that no words, however provoking, will justify the taking of life, it may well be questioned, whether, in this country, any man is bound to submit quietly to a blow, though intended only to disgrace him." The court, at this point, stopped the counsel, and said, "that he would charge the jury that what counsel had just read was not the law in this State ; that no words or insult would reduce a killing below manslaughter, and that the Supreme Court of this State had declared that such a sentiment as that in the jury box had covered this land with bloody graves." The defend ant objected to this action of the court, his objections were overruled, and he excepted.

The court, at the request of the solicitor, gave the following charge, to which the defendant excepted :　" The doctrine of self-defense is not available when the defendant was himself the aggressor, or was not reasonably free from fault in bringing on the difficulty ; nor can the principle be invoked, unless the defendant was, or appeared to be, so menaced by some overt act on the part of his assailant, as to create in his mind a reasonable apprehension of danger to his life, or else the infliction upon him of some grievous bodily harm, and that there was no other reasonable mode of effecting his escape from such impending peril."

The various rulings of the court to which exceptions were reserved, are now assigned as error.

LESLIE B. SHELDON, and R. T. IRVIN, for appellant.—(1.) The evidence of the witness Allen should have been admitted ; it tended to shed light on the fact whether or not there was a conspiracy, on the part of the accused and McCall, or on the deceased and Allen, to provoke a difficulty. Especially should this evidence have been admitted, when it was shown by the State's own witnesses that the defendant and the accused were strangers. Why should Allen point out the accused, if he did not wish Anthony to become his champion, and revenge him for the difficulty he had with defendant at the surprise party ? This evidence clearly tended to shed light on the motive with which Allen and Anthony went to church on the night of the killing, and tended to explain their actions after they went there. (2.) The testimony of Melissa Stewart, as to the intention with which Allen and others had followed the accused on the night of the surprise party, should have been admitted. The witness could testify as to what their intention was, if, as a matter of fact, she knew what it was, and there is nothing in the evidence to show that she did not have such knowledge.

[Harrison v. The State.] ,

(3.) The testimony of this same witness, as to her sending a man into the church to ask McCall to walk home with her, was clearly competent. The State's evidence tended to show that McCall had enticed the deceased to leave the church, so that the accused could create a difficulty with him, and this evidence tended to show that such was not the case. (4.) The presiding judge erred when he interrupted counsel when reading from Walker's American Law. The passage read stated the law correctly; and whether it did or not, the action of the judge prejudiced the minds of the jury to the damage of the accused.

T. N. McCLELLAN, Attorney-General, *contra.*—(1.) The statement of Melissa Stewart, that Allen stopped the defendant with the intention of provoking a difficulty with him, is clearly merely the conclusion of the witness from facts; and the facts, not the conclusion, should be given in evidence.— 49 Ala. 21 ; 52 Ala. 314. (2.) The evidence of this witness in regard to sending a man into the church to ask McCall to go home with her, could shed no light on the circumstances of the killing. It is immaterial for what purpose, or upon what occasion, or in respect to what message McCall went out. (3.) The remarks of the judge to the counsel did not have the effect of abridging the counsel's argument, or his right to be heard. It simply stated what the law was ; it was addressed to counsel, and not to the jury, and it is not shown to have influenced their verdict.—55 Ala. 47, 80. (4.) The charge given at instance of the solicitor announced a correct principle of law, applicable to the evidence in the case.—60 Ala. 26 ; 63 Ala. 40 ; 70 Ala. 4; 73 Ala. 362.

SOMERVILLE, J.—The judgment of conviction in this cause must be reversed, for at least two errors in the exclusion of evidence offered during the progress of the cause by the defendant.

In the first place, we are of opinion that the statement of the witness Allen was relevant, to the effect that a day or two before the difficulty, in which the deceased was killed, Allen had pointed the defendant out to the deceased on the public street, and told deceased that defendant was the man with whom witness had had a difficulty a few nights previous. There was some evidence tending to show a conspiracy between the deceased and Allen on the one hand, and the defendant and one McCall on the other, to participate in, if not bring on a difficulty with each other. The deceased, Anthony, was a stranger to defendant, being unacquainted with him ; and if he had any motive for injuring him, it seems from the evidence

[Harrison v. The State.]

to be attributable entirely to a disposition on his part to take sides with Allen in his previous quarrel with defendant. In this aspect of the case, it was relevant to show that Allen had pointed him out as the man with whom he had previously had a difficulty. This may have enlisted his sympathy with a comrade so far as to elicit his subsequent active aid in bringing about the fatal encounter with the defendant.

It was clearly incompetent for the witness Melissa Stewart to testify as to the supposed *intention* of Allen when he stopped the defendant a few nights before the difficulty. She could not know that he did so "with the intention of provoking a difficulty with him," as she stated, because no such intention was at the time communicated. This was a matter for the jury to determine, and not for the inference or opinion of witnesses.—*Burke v. The State*, 71 Ala. 377; *Brewer v. Watson, Ib.* 299; *Whizenant v. The State, Ib.* 383; *McCormick v. Joseph,* 77 Ala. 236. This portion of the witness' testimony was properly excluded by the court.

But the statement of the same witness, that she had sent a message to McCall, requesting him to come out of the church and walk home with her—which is alleged to have occurred just previous to the affray in question—should have been allowed to go to the jury as relevant. There was evidence tending to show that defendant had been overheard to say to McCall, if he would call some one, not named, out of the church, he, defendant, would shoot him down. One of the witnesses also testified that McCall went back into the church very soon and requested deceased to come out. The jury may have inferred that McCall's exit from the church was in pursuance of this deliberate plan of a conspiracy to murder. The statement of the witness Melissa Stewart, that she had sent for him for the purpose mentioned, was competent to rebut this, if it is believed by the jury to have been done in good faith, and without collusion between her and the defendant or McCall.

The remarks of the court, to which objection was taken, seem to have been directed to counsel, rather than to the jury. They announce no incorrect principle of law, however, and do not appear to us to have invaded the province either of the counsel, or of the jury.—*Meinaka v. The State*, 55 Ala. 47; *Campbell's case, Ib.* 80. The law does not look upon the principles of our criminal jurisprudence, recognizing the duty of retreat under certain circumstances in order to avoid unnecessary bloodshed, as "a cowardly doctrine"—which were the terms in which it was characterized by the extract read by the counsel to the jury. The presiding judge did right to correct this dangerous misapprehension, lest it might mislead the jury, to the dishonor of the law. Courts have a discretionary power,

[Curtis v. The State.]

moreover, to require all propositions of mere law to be argued as such to the presiding judge, and not to the jury. The jury are to receive the law from the court, and not from either the counsel, or from text-books or adjudged cases. This is a part of the police-power, so to speak, of the court, often necessary to prevent confusion and insure the orderly administration of justice in the trial court.

The charge given by the court, at the request of the solicitor, was unquestionably correct.— *Wills v. The State*, 73 Ala. 362; and cases cited in brief of the Attorney-General.

It was competent for the defendant, in making his statement under the statute, to the jury, to testify that he had had a previous difficulty with Allen, and to state the general nature of it, so as to show whether it was grave or trivial in character. But the details or particulars should not have been stated. *McAnally v. The State*, 74 Ala. 9; *Gray v. The State*, 63 Ala. 66.

For the errors above specified, the judgment of the City Court is reversed, and the cause remanded. The defendant will, in the meanwhile, be retained in custody, until discharged by due course of law,