TYSON, Presiding Judge.
The indictment charged the appellant with the robbery of C. G. Shavers by taking some $200.00 from his person, or by putting him in fear, etc. The jury found the appellant guilty as charged and set sentence at twenty-five years imprisonment in the penitentiary. The trial court then entered judgment which set sentence in accordance with this verdict.
*1006 Prior to trial the appellant made a motion to suppress the State’s evidence which, following a hearing thereon, was duly overruled.
C. G. Shavers testified that he owned and operated the C. G. Shaver’s Grocery on Highway 94 in Montgomery County, Alabama, on April 1, 1976. About 6:30 that morning, Mr. Henry Dees, a neighbor, was in the store, and two white males entered the store. He stated that Mr. Dees had just paid for some gasoline which he purchased when the following occurred (R. p. 34):
“A. There were two men that come in.
“Q. All right. And I will ask you whether or not you had known either one of those men before?
“A. No, I had never seen those two before.
“Q. You had not seen them before?
“A. No, sir.
“Q. I will ask you to tell this jury what those two men did?
“A. Well, the two men came into the store. There was a tall man and the other man was kind of stout. So, the tall man stayed at the door and the stout man came over and told me it was a holdup and not to try anything, that there were three men outside in the car that had shotguns. He told me to empty my pockets and empty the cash register and I did that and put the money out on the counter.
“Q. All right, sir. Now, let me back up and ask you a couple of questions. This man that stood over by the door, did you see him with any kind of weapon?
“A. Yes, sir, he had a little gun in his hand, a revolver.
“Q. Describe it as best you can?
“A. Well, it looked like a .22 to me.
“Q. Looked like a .22?
“A. Yes.
“Q. What color was it?
“A. Well, it was a little dark looking gun.”
Mr. Shavers testified that the two men made Mr. Dees and himself lie down on the floor, then took some $200.00 from his person and from the cash register. He stated that he had just put over $75.00 in the cash register prior to Mr. Dees paying him $2.65 for some gasoline. He stated that he heard someone say, “Someone’s coming,” that a young colored boy, one Michael Toles, entered the store to pay for some gasoline that he had pumped, and they made him lie down on the floor and took his billfold. He stated that as the men turned to leave, one of them said, “Let’s kill him,” and the other replied, “No, there’s no use in that, let’s go.” They then left.
On cross-examination, Donald King and Thomas Cline were brought into the courtroom and were positively identified by Mr. Shaver as being the two men who entered the store and took the proceeds from the cash register that morning.
Michael Carl Toles testified he was sixteen years of age and lived in the Grady community in Montgomery County, Alabama, on April 1, 1976. Just before 6:30 in the morning, he stopped at Shaver’s Grocery to get some gas, and after pumping the gas, he entered the store and noticed two white men inside, that they told him to lie down on the floor and took his billfold. He stated that he had seen a light green Buick automobile outside with a man seated at the steering wheel. He stated that one of the men said, “Don’t kill them,” and they just left the store.
Murry Hooten testified he lived about 200 yards from Shaver’s Grocery in Grady, Alabama, on Highway 94,- on April 1, 1976. He testified that on a Thursday morning, about 6:30, he saw a green Buick parked in front of Shaver’s Grocery with a white man seated under the wheel. He stated that as he started to drive to the front of the store he saw two other white men run out and jump into the car, then hurriedly drive away. He testified that he noticed all three of the men were white, but he could not identify any of them. He stated that the car was a 1967 Buick.
Donald C. King testified that he was forty-one years of age and lived at 1928 Berk-ley Avenue in Bessemer, Alabama. He stated that his mother owned a grocery *1007 store there and that he worked for her. He stated on the early morning of April 1, 1976, he was awakened around 3:00 o’clock by Billy Cline and Charles King, the appellant. He stated that they were drinking and they asked him to get up and go with them to the Majik Mart where more beer was purchased. He stated that they then went to a place known as Bluebird on the Bessemer Highway and picked up some whiskey. He said that Charles King stated that he had a four months old baby in Montgomery with his wife, and that he got on the Interstate and drove the car, a green 1967 Buick, which belonged to him, to Montgomery. He stated that after arriving in Montgomery, Billy Cline said, “Let’s rob a place.” Charles King stated that he knew of a store, but couldn’t go inside because the man knew him. King stated that he had a pistol which he had owned for about fifteen years. He stated that Charles King drove the car to Shaver’s Grocery, and remained in the car while he and Billy Cline went inside the store. He said that Billy Cline took the pistol, ordered the men to lie down on the floor, then took the money from the cash register and from Mr. Shaver. He stated that Billy Cline also took money from the other man who was lying on the floor. He stated that Billy Cline was taller than he, and that Cline stated in the store, “Let’s kill everybody,” and that he, King, replied, “No, leave them alone, and let’s go.”
Donald King stated that just before leaving the store, a young colored boy entered, that they made him lie down on the floor and took his wallet. He stated that they were driving back to Birmingham when they were pulled over by the Alabaster law, that they were arrested, and the pistol and money were taken from them by the Alabaster police.
On cross-examination Donald King said that he did not know anything about the robbery before they reached Montgomery. He stated that they had all been drinking that morning. He stated that he made no deal whatever with the State’s attorney, Mr. Teague, in return for his testimony in this case, and that no one had made any promises to him in order to get him to come to court, plead guilty, and testify.
Billy White testified that he was a Montgomery County Sheriff’s Investigator on April 1, 1976. He testified that he received the description of three white males who had robbed Shaver’s Grocery and put out an all-points bulletin on the State Law Enforcement broadcasting frequency. He testified that later he drove to Alabaster and took Mr. Henry Dees with him. He said that when they arrived, the Alabaster police had a 1967 Buick answering the description, and also Charles King, Donald King, and William Cline.
On cross-examination he testified that the billfolds and money which were on the three men were turned over to him, along with a .22 caliber pistol.
Larry Doss testified that he was an Alabaster police patrolman on April 1, 1976. He received a communication on his police radio concerning a 1967 green Buick containing three white males with a description of two of them, one being tall and slender, and the other being heavy set. He stated that he followed and stopped an automobile near Alabaster where Interstate 65 meets U.S. 31, North. He testified that he radioed for assistance, and that Alabaster Officer Frank Page and Chief Carter drove up within a few minutes of his stopping the automobile. He stated that he asked the driver, Charles King, for identification and he handed him his wallet. He stated that he asked King to open the trunk of his car, and he replied that he would be glad to do so. Upon looking in the trunk, Officer Doss found a green jacket which matched the green pants Cline was wearing, and a gray plaid jacket which matched the gray pants Donald King was wearing. He testified that he found a .22 caliber blue steel revolver in Donald King’s plaid jacket. He said that Chief Carter was present when Donald King stated that the pistol belonged to him, and that he, Doss, turned the pistol over to Chief Carter. The three men were then taken to the Alabaster City Jail.
*1008 Alabaster Police Chief C. E. Carter testified that in response to a radio request from Officer Doss, he went to the I 65-U.S. 31 Interchange and saw that Officer Doss had stopped a 1967 green Buick with three white males in it. He said that shortly thereafter State Trooper Posey drove up, accompanied by Alabaster Police Officer Frank Page. Chief Carter stated that he was present when Charles King voluntarily opened the trunk of his car, that two jackets were removed, and that a .22 caliber pistol was found in the pocket of the plaid jacket. He said that Officer Doss handed the pistol to him which he then identified from a mark that he had placed upon the weapon.
The appellant’s motion to exclude the State’s evidence was overruled.
William Thomas Cline testified that he was thirty-six years of age at trial and that he was convicted in Montgomery Circuit Court and sentenced to twenty-five years for the robbery of Shaver’s Grocery. He testified that on the morning of April 1, 1976, he and Charles King went to the home of Donald King and got him to go with them to get some beer, and then drove from Bessemer toward the Montgomery Highway. He said that Charles King was married and had a wife and baby living in Montgomery, so they began driving to Montgomery. Cline testified that because his license had been revoked he did not drive, that Charles King drove the car to Montgomery. He testified that before coming to Montgomery Donald King had discussed a robbery with them, and upon arrival in Montgomery they left Charles King at his wife’s home, then met a man known as “Chico.” Cline testified that Chico drove them to Shaver’s Grocery where he and Donald King went into the store. He testified that they had asked Charles King for permission to use his car to go eat breakfast, that they did not discuss their plan to rob the grocery in Charles King’s presence. Upon arrival at Shaver’s Grocery, he testified that Donald King went inside with him, that they took the proceeds and went out, and Chico drove them back to Montgomery where they picked up Charles King, then drove back toward Bessemer when Alabaster police officers stopped them.
On cross-examination Cline admitted two cases of grand larceny in 1959, a 1960 conviction of car theft, two 1963 burglary convictions, and five burglary convictions in 1965.
Charles E. King testified that he worked for Alabama Coal Haulers in Jefferson County, Alabama, but that his residence was 3914 Mattehorn Street in Montgomery. He testified that on April 1, 1976, he was married and had a four months old baby girl. He testified that he lived at Weaver Trailer Park in Bessemer because of his job. He testified that he and William Cline drove to the trailer residence of Donald King and picked him up on the early morning of April 1, 1976. He testified that he told them he wanted to see his wife and baby, and that he had a speeding ticket that he needed to see about. He testified that they stopped at a Majik Mart in Bessemer and bought some gas and some beer, then began driving to Montgomery. King testified that he arrived at his home in Montgomery between 5:15 and 5:30 and went into the house and noticed that everyone was asleep. He stated that William Cline and Donald King asked him if they could use his car to get breakfast, and he did not see them again until 7:30 or 8:00 when they drove up in the driveway and said, “Let’s go back to Bessemer.”
Charles King stated that it was about 10:00 o’clock that morning when the Alabaster police officer asked him to pull over, and that he gave him his wallet and drivers license. King testified that he voluntarily got out of the car and opened the trunk, and that he agreed to the car being searched.
On cross-examination Charles King admitted that in 1958 he had three convictions of grand larceny. He also testified that he had a 1962 conviction for petty larceny, and a 1962 conviction for robbery. He testified that he was thirty-eight years of age. He denied driving his automobile to Shaver’s Grocery on the morning of April 1, 1976, *1009 and insisted that he was at his home on Mattehorn Street in Montgomery, which is about one and a half miles off the Woodley Road in Spring Valley Estates. He admitted that he had known William Cline since 1959.
In rebuttal the State called Mr. Gregory A. Carr who was an attorney for William Cline in a companion case. Mr. Carr testified that he had talked with Richard Bentley of the District Attorney’s Office prior to the trial of Mr. Cline’s case, but there had been no offer made to him concerning his client, and no recommendation that he would serve ten years if he plead guilty.
I
Appellant contends that his motion to exclude should have been granted since the State’s case was based upon the testimony of an admitted accomplice, one Donald King, and cites us to Title 15, Section 307, Code of Alabama. 1940; and to Sorrell v. State, 249 Ala. 292, 31 So.2d 82.
We are of the opinion that there was sufficient evidence here shown, and the trial court properly denied the appellant’s motion to exclude. Burns v. State, 246 Ala. 135, 19 So.2d 450; Bridges v. State, 52 Ala.App. 546, 295 So.2d 266.
All three of the men were identified to the police officers by Mr. Dees, who passed away prior to trial. Moreover, corroborating evidence dealing with an accomplice need not directly confirm any particular fact stated by such accomplice. Skumro v. State, 234 Ala. 4, 170 So. 776.
As observed by this Court through Harris, J., in Wyatt v. State, 51 Ala.App. 226, 283 So.2d 675:
“Under the statute requiring corroboration of the testimony of accomplices to authorize conviction of a felony (Title 15, § 307, Code of Alabama 1940), the corroborative evidence need not be strong, nor sufficient of itself to support the conviction, the criterion being that it legitimately tends to connect the accused with the offense. 23 C.J.S. Criminal Law § 812(5), p. 125 (1961); Moore v. State, 30 Ala.App. 304, 5 So.2d 644.”
The appellant’s motion was properly denied. Tanner v. State, 291 Ala. 70, 277 So.2d 885, and authorities therein cited.
II
The appellant next contends that the trial court erred in not allowing appellant’s counsel to argue the legal effect of certain requested charges to the jury.
In Keeby v. State, 52 Ala.App. 31, 288 So.2d 813, cert. denied 292 Ala. 724, 288 So.2d 817, this court said:
“Our Supreme Court, in writing to the question of one’s right to be heard through counsel of his choice, in Cross v. State, 68 Ala. 476, held:
“ ‘. . . Defendants have the right to be heard by themselves and counsel. The constitution secures this much to them. In addressing the jury, counsel must be allowed to select and pursue their own line of argument, their own methods of dealing with the testimony. They may state the principles of law applicable to the case, and may argue such principles, and quote from books in elucidation of their views of the law. This, however, is an argument before the court, and for the court; for the jury are not judges of the law. It is their sworn duty to receive and apply the law as the same is given them in charge by the court. The presiding judge has the same right and power to declare—authoritatively to declare— the law, as juries have to find the facts. Neither should or can invade the province of the other, without a breach of duty, and without detriment to the time-sanctioned theory of judicial trials. A known or intentional invasion by either, of the domain of the other, would be a gross violation of a sworn duty . . . .’
“Further, the Supreme Court in Harrison v. State, 78 Ala. 5, stated the rule thusly: “ ‘. . Courts have a discretionary power, moreover, to require all propositions of mere law to be argued as such to the presiding judge, and not to the jury. The jury are to receive the law from the *1010 court, and not from either the counsel, or from text-books or adjudged cases. This is a part of the police-power, so to speak, of the court, often necessary to prevent confusion and insure the orderly administration of justice in the trial court.’
“The former Court of Appeals, through then Presiding Judge Carr, in Smith v. State, 36 Ala.App. 646, 62 So.2d 473, stated the rule in this manner:
“ ‘In the early case of Harrison v. State, 78 Ala. 5, the Supreme Court held in effect that the jury should receive the law from instructions by the court and that the presiding judge is clothed with discretionary power to require all legal propositions and principles to be presented to the court and not to the jury. See also, Williams v. State, 83 Ala. 68, 3 So. 743; Ex parte Hill (City of Tuscaloosa v. Hill), 194 Ala. 559, 69 So. 598; Davis v. State, 213 Ala. 541, 105 So. 677; Birmingham Electric Co. v. Wood, 222 Ala. 103, 130 So. 786; Louisville & N.R. Co. v. Atkinson, 20 Ala.App. 620, 104 So. 835.’
“It is clear in the case at bar that the trial judge did not abuse his discretion by refusing to allow appellant’s counsel to argue for the written charges to the Jury in closing argument before submitting same to the trial judge. As observed by our Supreme Court in Davis v. State, 213 Ala. 541, 105 So. 677, ‘The law of the case must be taken by the jury from the trial judge.’ New v. State, 19 Ala.App. 140, 96 So. 720; White v. State, 41 Ala.App. 54, 123 So.2d 179, cert. den. 271 Ala. 702, 123 So.2d 186; Higginbotham v. State, 262 Ala. 236, 78 So.2d 637.”
Ill
Appellant’s attorney calls our attention to the trial court’s action in refusing certain written requested charges, some thirty-one in number. The trial judge did, however, in addition to giving an extensive oral charge, gave fifteen of the appellant’s written requested charges.
We have carefully examined those written charges which were refused and find that they were either covered by the oral charge or the given written charges, or were incorrect principles of law, abstract, argumentative, or invasive of the province of the jury, and therefore properly refused. Title 7, Section 273, Code of Alabama 1940.
We have carefully examined this record and find same to be free from error. The judgment is therefore
AFFIRMED.
All the Judges concur.